**The STATE of Texas, Appellant,**

v.

**Daniel Orlando CARDENAS, Appellee.**

**The State of Texas, Appellant,**

v.

**John I. Davis, Appellee.**

**Nos. 01–00–00764–CR, 01–00–00765–CR, 01–00–00769–CR, and 01–00–00770–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 11, 2001.

Rehearing Overruled Feb. 1, 2001.

James R. Walker, Jr., Houston, for Appellee Cardenas.

E. Matthew Leeper, Houston, for Appellee Davis.

Alan Curry, Houston for State.

Panel consists of Justices COHEN, TAFT, and PRICE.*

## OPINION

TAFT, Justice.

Appellees, Daniel Orlando Cardenas and John I. Davis, were charged with possession of more than four and less than 200 grams of cocaine. Appellees filed a motion to suppress, which the trial court granted. We address whether the trial court erred in granting appellees' motion on the grounds their continued detention by the investigating officer was not justified, thereby invalidating their consent to have their car searched. We reverse and remand.

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## Facts

On October 4, 1999, Officer Lawrence Lilly was parked on the shoulder of the roadway along Interstate Highway 10. While looking in his rear view mirror, he noticed a car traveling behind him straddling the center stripe. As the car passed, he noticed that half of it was still over the center stripe, eventually moving into the outside lane without signaling. Lilly pulled the car over.

While Lilly was approaching the car, its driver, Cardenas, exited without being told to do so, which Lilly found unusual. Lilly asked Cardenas to step to the back of the car, told him why he had been stopped, and asked him for his driver's license. Lilly also asked Cardenas if he had been drinking or if he was tired, and Cardenas answered "no." Lilly did not smell alcohol on Cardenas's breath. Cardenas's hand trembled as he handed his license over, and Lilly noticed Cardenas had a blank look on his face.

Lilly thought something was not right after noticing Cardenas's nervousness. At that point, Lilly asked Cardenas where he was coming from, and Cardenas responded he was coming from Houston, where he had attended a baseball game. Lilly asked Cardenas these questions in order to compare the answers to the passenger's story, and also to confirm why Cardenas appeared so nervous.

After talking to Cardenas, Lilly then asked the passenger, appellee John Davis, to roll his window down.[1] Lilly asked Davis for identification, but he did not have any. Lilly then asked questions about the Astros game, to which Davis responded they had not gone because the game was sold out. After hearing the conflicting statements, Lilly thought there was something illegal going on. Lilly told Cardenas his patrol duties entailed the recovery of contraband and narcotics, and asked him if he had any of these items in his vehicle. Lilly then asked Cardenas twice if he could search the vehicle, and both times Cardenas responded affirmatively. Lilly searched the car and found cocaine. The total time that lapsed between the initial stop and the consent request was about five or six minutes.

## Scope of Investigation

 There are no findings of fact in this case. As a general rule, in the absence of trial court findings of fact, we are unable to hold that the trial court abused its discretion in granting appellee's motion to suppress. *State v. Davis*, 991 S.W.2d 882, 883 (Tex.App.—Houston [1st Dist.] 1999, no pet.). Nevertheless, the instant case presents a legal ruling based upon undisputed facts because the trial court explicitly accepted the officer's version of the facts[2] and because it based its decision on the legal conclusion that *United States v. Dortch*, 199 F.3d 193 (5th Cir.1999), *opinion corrected on denial of reh'g*, 203 F.3d 883 (5th Cir.2000), was controlling.[3] Accordingly, we review the ruling of the trial court de novo. *See Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999).

---

1. The window did not roll all the way down even though Lilly could hear the motor running.

2. The trial judge stated during the suppression hearing:

 Before argument, let's narrow the issue. I think the issue is pretty clear. Specifically, whether inconsistent statements by a passenger and driver to the police officer on a stop justified a request by the police officer for a consent to search....

3. Fifth Circuit precedent is not binding on Texas courts, although constitutional pronouncements are in most cases highly persua-

sive. *Vaughn v. State*, 888 S.W.2d 62, 73–74 (Tex.App.—Houston [1st Dist.] 1994, *aff'd*, 931 S.W.2d 564 (Tex.Crim.App.1996)). In *Dortch*, the Fifth Circuit held that the defendant's constitutional rights were violated when his detention extended beyond the valid reason for the initial stop. *Dortch*, 199 F.3d at 198. Although *Dortch* does not control, the same principle was established by the Court of Criminal Appeals in *Davis v. State*, 947 S.W.2d 240 (Tex.Crim.App.1997), which is binding authority. *Id.* at 244.

In this case, the trial court implicitly found that Officer Lilly stopped the car Cardenas was driving because it was straddling the center lane and moving into the next lane without properly signaling. *See* Tex.Transp.Code Ann. § 545.104(a) (Vernon 1999). An officer may lawfully stop and detain a person who commits a traffic violation. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex.Crim.App.1992). Accordingly, we conclude that it was reasonable for Trooper Lilly to conduct an investigation of the traffic infraction.

A routine traffic stop resembles an investigative detention. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3149–50, 82 L.Ed.2d 317 (1984); *Martinez v. State*, 29 S.W.3d 609, 611 (Tex.App.— Houston [1st Dist.] 2000, pet. filed). Investigative detentions must be reasonably related in scope to the circumstances that justified the interference in the first place. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim.App.1997). To determine the reasonableness of an investigative detention, we apply the *Terry* test: (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that justified the initial interference. *See Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *Davis*, 947 S.W.2d at 244.

Under *Davis*, therefore, Cardenas's investigative detention was required to be temporary and to last no longer than was necessary to determine why Cardenas was driving in the manner he was. *See Davis*, 947 S.W.2d at 244. In other words, once Lilly concluded the investigation of the traffic violation, he could no longer lawfully detain or question Cardenas unless he had reasonable suspicion to believe another offense was being committed. *See id.* at 245.

During a traffic stop, the officer has a right to check for outstanding warrants and request: (1) a driver's license; (2) insurance papers; and (3) identifica-

tion. *Id.* & n. 6. Additionally, the officer may ask about the driver's destination and purpose of travel during a valid detention, *Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref'd), although neither the driver nor the passenger is compelled to answer these questions.

Here, Lilly asked Cardenas for his driver's license, and questioned him about his previous whereabouts. The request for a driver's license is lawful standard procedure for any traffic stop. Because Lilly's suspicions were aroused by appellant's unusual actions and nervousness, Lilly's questioning was reasonably related to the traffic stop investigation. Lilly was well within the temporal scope of the initial investigation because less than five minutes had passed when he began questioning appellant. Moreover, the record shows that Lilly had not yet run a check on Cardenas's driver's license, nor had he conducted a background check, which are routine procedures during a traffic investigation. *See id.; Dortch*, 199 F.3d at 199. In other words, Lilly had not yet completed his traffic investigation when he requested, and received consent to search.

In *Dortch*, the appellant was the driver of a rental car stopped for traveling too close to a tractor trailer. *Dortch*, 199 F.3d at 195. The officers checked Dortch's license and car rental papers, and also patted him down. *Id.* After determining Dortch was not listed on the rental papers, an officer questioned him and his passenger about who owned the car, and the purpose of their trip, while another officer ran a computer check. *Id.* at 195–96. About eight minutes into the stop, while the computer check was pending, one of the officers requested consent to search the car. *Id.* at 196. Dortch denied consent to search the entire car, but consented to a search of the trunk only, which the officers

did not do, telling him instead they would bring a canine unit to the scene. *Id.*[4]

After about 15 minutes had elapsed, the computer check results came back, but turned up nothing. *Id.* The officers did not tell Dortch that, but detained him for another five minutes, until the canine unit arrived. *Id.* In the meantime, Dortch's license and rental papers remained in the custody of the officers. *Id.* The officers unsuccessfully searched the car for drugs after the dog alerted them to the driver's door and seat. *Id.* The officers continued the detention, and gave Dortch a third pat-down, which resulted in the discovery of drugs. *Id.* The Fifth Circuit reversed the trial court's denial of Dortch's motion to suppress, holding that the purpose of the initial stop was fulfilled "when the computer check came back negative," and that "Dortch should have been free to leave in his car at that point." *Id.* at 199.

Accordingly, this case is distinguishable from *Dortch* in several crucial aspects: (1) unlike the officers in *Dortch*, Officer Lilly had not completed his initial investigation when he began questioning Cardenas and Davis; (2) the detention had lasted only five or six minutes, as opposed to 20 or more minutes in *Dortch*; (3) unlike appellee, who consented to the search of his car, Dortch denied consent to search the entire car, but limited his consent to the trunk only; as a result, the police continued Dortch's detention for 20 minutes while waiting for the canine unit to arrive; (4) unlike *Dortch*, there was no sniff of appellee's vehicle by a dog, and no continued detention after the positive dog sniff; and (5) unlike the officers in *Dortch*, Lilly did not further detain appellee after an unsuccessful search of the car in order to pat him down a third time. Therefore, the detention in *Dortch* was much more intrusive than the detention in this case.

Moreover, Lilly had not exceeded the scope of the initial investigation when he asked for consent. *See Powell*, 5 S.W.3d at 379. Indeed, this case is factually more like *Powell*. In that case, Powell and his three companions were stopped because the car Powell was driving was occupying more than one traffic lane. *Powell*, 5 S.W.3d at 374. The officer asked Powell about his identity, place of employment, destination, purpose of the trip, traveling companions, and his criminal record. *Id.* The officer posed similar questions to the passengers and received inconsistent answers. *Id.* The officer investigated the ownership of the car and found it was not registered to any of its occupants. *Id.* The officer also learned that, contrary to his statement, Powell had been arrested before. *Id.* After issuing a warning citation, the officer asked Powell for consent to search the car. *Id.* Powell said he could not give consent, but one of the passengers did; the search revealed the car contained narcotics. *Id.*

The *Powell* court reasoned that the officer obtained valid consent because *he developed reasonable suspicion before* he had concluded his initial investigation, i.e., before he issued the citation. *See id.* at 379. In this case, the State's position that consent was obtained during the course of the traffic investigation is stronger than in *Powell*. Lilly obtained consent to search the car before concluding his initial investigation. The record shows that, when Lilly asked for consent, only five or six minutes had lapsed since the initial stop. There is no evidence that Lilly had yet initiated a computer check of the vehicle or the driver. Because Lilly obtained consent to search while still in the scope of a lawful traffic detention, the consent was valid. Accordingly, the trial court erred by granting Cardenas's and Davis's motions to suppress.

We sustain the State's sole point of error.

4. The officers also told Dortch, however, that he would be free to leave after they completed the search for warrants, even though they were going to detain the car. *Id.* The officers also patted Dortch down a second time, again finding nothing. *Id.*

## Conclusion

We reverse the ruling of the trial court and remand the cause.