**The STATE of Texas, Appellant,**

v.

**George GUO, Appellee.**

**Nos. 01–00–00562–CR to 01–00–00565–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 27, 2001.

Pheobe S. Smith, Houston, for Appellee.

John H. Harrity, III, Asst. Dist. Attorney-Fort Bend County, Richmond, for Appellee.

Panel consists of Justices HEDGES, NUCHIA, and PRICE*.

## OPINION

FRANK C. PRICE, Justice.

This is an interlocutory appeal, brought by the State after the trial court granted defendant, George Guo's, motion to suppress. *See* TEX.CODE CRIM. PROC. ANN. art. 44.01(a)(5) (Vernon Supp.2001). We affirm.

---

* The Honorable Frank C. Price, former justice, Court of Appeals, First District of Texas at

## Background

Evidence adduced at the suppression hearing included the following:

**The Arrest—June 28, 1999**

On the night of June 28, 1999, Jeff Hillburn called the police after seeing a suspicious person park a pickup truck on his street and walk onto the property of his neighbor, Suzanne Phillips. The police arrived at Phillips's home, and, after a violent struggle, arrested the defendant, Guo, for Assault on a Public Servant. A photograph of Phillips's daughter, a pantyhose mask, a white glove, a brown glove, and a pair of shoes were found in Guo's possession. The truck Guo was driving was located 40 feet from the arrest. Police officers called a wrecker to have the truck towed.

Before towing the truck, the police inventoried it and found several items, including a black briefcase. The briefcase was not searched at this time.

**The First Warrantless Search of the Briefcase—July 2, 1999**

After Guo was arrested, the police placed an "evidentiary hold" on the truck and towed it to Collision Clinic. On July 2, five days after Guo's arrest, the police contacted Douglas Tian, the registered owner of the truck. Tian gave the police consent to search the truck, which the officers did. Tian, however, claimed that the briefcase did not belong to him. The police officer then searched the briefcase for "a couple of, three minutes." Inside, he found condoms, an expired driver's license belonging to Guo, keys, business cards, and work orders. The truck was then released to Tian.

Houston, participating by assignment.

## The Second Warrantless Search of the Briefcase—July 20, 1999

On July 20, 1999, the police again searched the briefcase in an effort to "better ascertain ownership of the briefcase." In addition to Guo's expired driver's license, the police found numerous index cards with names on them, a blue folder, a clipboard, and a green ledger. The green ledger contained the name, Francis Maglalang. Maglalang was the victim in a 1998 rape, and the police had already noted several similarities between her case and the case for which Guo was under investigation. After discovering Maglalang's name in the green ledger, the police "stopped [the search] and out of an abundance of caution wait (sic) to obtain a search warrant."

## The Briefcase Searched Pursuant to Warrant—July 21, 1999

On July 21, 1999, the police obtained a search warrant to search the briefcase. The affidavit supporting the search warrant contained the following statements:

On July 2, 1999, [the investigating officer] identified the registered owner of the Toyota pickup and obtained a consent to search the Toyota pickup from the owner, Douglas Hand (sic). While searching the Toyota pickup [the investigating officer] observed a one white knit glove under the drivers seat and a leather softsided briefcase. Said briefcase was open and [the investigating officer] observed one dark brown fabric glove, business work orders and what appeared to be condoms. [The investigating officer] indicated that the gloves observed in the Toyota pickup appeared to be of the same make and material as the two gloves found of the defendant at the time of his arrest. Douglas Hand (sic) informed [the investigating officer] that the briefcase did not belong to Douglas Hand (sic). *[The investigating officer]*

*entered the briefcase to identify the owner and located an expired Texas drivers license issued to George Guo.* [The investigating officer] seized the briefcase at this time and placed in the Meadows Place Police Department for safekeeping. (Emphasis added).

The search warrant was issued and executed the same day—July 21, 1999. The following items were seized from the briefcase: (1) a brown fabric glove with loose hair; (2) a clipboard with business records; (3) a green book with business records, which contained the name Francine Maglalang; (4) a blue folder with business records, which contained the address to which the police dogs had tracked Francine Maglalang's assailant; (5) an Exxon receipt made out to Shaio M. Kuo, dated 6–17–99; (6) numerous file cards containing names, license plate numbers, addresses, descriptions, car makes, and locations; (7) three unused condoms; and, (8) an expired driver's license in the name of George Guo.

## The Residence Searched Pursuant to Warrant—July 23, 1999

On July 23, 1999, the police obtained a search warrant for George Guo's residence. The affidavit for this search included testimony about Francine Maglalang's assault. The warrant was executed the same day, and the police recovered, among other things: (1) four pairs of panty hose; (2) seven black, cloth gloves; (3) a computer tower, monitor, and laptop; (3) photographs of a nude woman; (4) twenty-one assorted keys and keyrings; (5) a pellet pistol; (6) black nylon gloves; and (7) notebooks containing business records. Another green ledger with Francine Maglalang's address was found in the residence, as well as documents indicating that Guo had access to two storage units.

## The Storage Units Searched Pursuant to Warrant—July 24, 1999

The next day, the police obtained a warrant to search the two storage units, which

they had learned about as a result of the search of appellant's residence the previous day. Again, the affidavit was based, in part, on the information about the assault on Francine Maglalang. The warrant was executed the same day, and the police recovered the following: (1) index cards with name and address; (2) a locked safe; (3) computer disks; and (4) boxes of papers and personal items.

**The Motions to Suppress and Rulings Thereon**

Guo filed motions to suppress all of the evidence seized as a result of the searches of the briefcase, the residence, and the storage units. Specifically, he argued that the first two warrantless searches of the briefcase were unlawful, and that those searches tainted the later searches, which were conducted pursuant to warrants. The trial court held a hearing on the motions to suppress, and after hearing five days of testimony from three defense witnesses and eight State's witnesses, granted the motions. The State requested findings of fact and conclusions of law, but the trial court did not make such findings. This interlocutory appeal followed.

### Law and Analysis

**The Warrantless Searches—Reviewable without Findings of Fact?**

In points of error one through five, the State contends the trial court erred by granting Guo's motion to suppress the evidence seized from the briefcase pursuant to the two warrantless searches, arguing (1) that Guo lacked standing to contest the search; (2) that the search was incident to arrest; (3) that the search was a lawful inventory search; or (4) was a lawful consent search.

In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim. App.1999). The trial court may believe or disbelieve any witnesses' testimony. *Johnson v. State*, 871 S.W.2d 744, 748 (Tex.Crim.App.1994). As the trier of fact, the trial court may disbelieve testimony even if the testimony is uncontroverted. *Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim.App.1987); *State v. Davis*, 991 S.W.2d 882, 883 (Tex.App.—Houston [1st Dist.] 1999, no pet.).

In reviewing decisions on motions to suppress, we afford almost total deference to trial courts' determinations of facts and their rulings on mixed questions of law and fact when those fact findings and rulings are based on an evaluation of credibility and demeanor. *Loserth v. State*, 963 S.W.2d 770, 772 (Tex.Crim.App. 1998). Mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor are reviewed de novo. *Id.* In reviewing a trial court's decision on suppression, we view the evidence in the light most favorable to the trial court's ruling. *Ballard*, 987 S.W.2d at 891.

In this case, the trial court granted the motion to suppress without making any written findings of fact. As a general rule, in the absence of findings of fact by the trial court, we are unable to hold that the trial court abused its discretion in granting a defendant's motion to suppress. *State v. Cardenas*, 36 S.W.3d 243, 245 (Tex.App.-Houston [1st Dist.] 2001, pet. filed).[1] Assuming that the

---

1. In *Cardenas*, we were able to review the trial court's ruling, even without findings of fact, because the facts were undisputed, the trial court explicitly accepted the State's evidence, and it based its ruling on a specific legal issue. 36 S.W.3d at 245. Such is not the case here. The evidence was disputed,

State's legal arguments are sound, the only valid reason for the trial court to have granted the motion to suppress is that it didn't believe the State's version of the evidence. *State v. Davis*, 991 S.W.2d 882, 883 (Tex.App.-Houston [1st Dist.] 1999, no pet.). From the record before us, we are unable to tell which of the State's witnesses, if any, that the trial court believed or disbelieved in making its ruling. It could be that the trial court did not believe the police officers on some key piece of evidence, such as whether the truck was locked or unlocked, whether the briefcase was open and in plain view, or whether or not the officers knew, prior to the first warrantless search, that the briefcase belonged to George Guo. Without findings of fact, there is simply no set of "concrete" facts upon which to conduct a de novo review. *See State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000) (in absence of findings of fact, even uncontroverted State's evidence will not support de novo review); *State v. Davis*, 991 S.W.2d at 883 (in absence of findings of fact, appellate court unable to hold that trial court abused its discretion in granting defendant's motion to suppress).

Accordingly, we overrule points of error one through five.

**The Searches Pursuant to a Warrant—Fruit of the Poisonous Tree?**

■ In points of error six through nine, the State contends that the trial court erred by suppressing the evidence recovered from the briefcase; in points of error 12 through 15, the State argues that the trial court erred by suppressing the evidence recovered from Guo's residence; and in points of error 18 through 21, the State argues that the trial court erred by suppressing the evidence recovered from the two storage sheds. In all of these points of error, the State contends that the evidence seized should have been admissible because it was seized pursuant to a lawful warrant. The defendant, however, argues that the searches pursuant to warrants were tainted by the two prior warrantless searches of the briefcase.

■ Evidence will not be excluded as "fruit" unless the illegality is *at least* the "but for" cause of the discovery of the evidence. Suppression is not justified unless "the challenged evidence is in some sense the product of illegal governmental activity." *Segura v. U.S.*, 468 U.S. 796, 815, 104 S.Ct. 3380, 3391, 82 L.Ed.2d 599 (1984) (quoting *United States v. Crews*, 445 U.S., 463, 471, 100 S.Ct. 1244, 1250, 63 L.Ed.2d 537 (1980)). However, satisfying the "but for" requirement is not the only test of whether the evidence is an illegal "fruit." The more apt question to ask is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

We hold that, in this case, the three searches pursuant to a warrant were tainted by the two previous warrantless searches. The first warrantless search provided a direct link to Guo because an expired driver's license in his name was found inside the briefcase. The police exploited this discovery by using it as a basis for establishing probable cause for the warrant to search the briefcase. The police knew that they would discover the link to Guo because they had already searched the briefcase without a warrant. The second warrantless search of the briefcase revealed a link between Guo and the Fran-

and the grounds for the trial court's ruling are not clear.

cine Maglalang assault. Details of the Maglalang assault were used to establish probable cause for the warrants to search Guo's home and storage units. We conclude that the police exploited the information discovered in the two warrantless searches in order to obtain the warrants. Thus, the searches pursuant to the warrants were tainted. *See State v. Aguirre,* 5 S.W.3d 911, 914 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (because evidence supporting search warrant was illegally obtained, evidence recovered by executing warrant was fruit of illegal search); *State v. Johnson,* 896 S.W.2d 277, 288 (Tex.App.-Houston [1st Dist.] 1995, no pet.) (search pursuant to warrant invalid where information used in affidavit to obtain warrant was gained by prior illegal, warrantless search).

Because the searches pursuant to warrants were tainted by the two previous, warrantless searches, the trial court did not err by suppressing the evidence obtained when those warrants were executed. Accordingly, we overrule the State's points of error six through nine, 12 through 15, and 18 through 21.

**The Trial Court's Refusal to File Findings of Fact**

In points of error ten, 11, 16, 17, and 22, the State contends the trial court erred by not filing findings of facts and conclusions of law or designating the basis of its ruling. The trial court, however, is not required to make such rulings. *State v. Rivenburgh,* 933 S.W.2d 698, 702 n. 1 (Tex.App.-San Antonio 1996, no pet.). We are aware that the trial court, by refusing to make findings of fact, may, in effect, thwart the State's right to appeal a suppression ruling. However, there is no statutory requirement or other precedent for requiring the trial judge to make such findings.

In *State v. Ross,* the State argued that trial courts could insulate their rulings on motions to suppress by merely not filing findings of fact. 32 S.W.3d at 858. The Court of Criminal Appeals responded by stating:

Our holding does nothing to limit the State's right to appeal under article 44.01(a)(5). The State is just as free to make the appeal today as it was before the decision today. If a non-prevailing party wishes to avoid the effects of these appellate presumptions, then it should attempt to get the rationale for the trial court's ruling on the record through either a verbal explanation at the hearing or express findings of fact and conclusions of law.

*Ross,* 32 S.W.3d at 858. However, the court did not state that the failure or refusal of the trial court to make the requested findings would be error. Despite our sympathy with the State's plight, we are constrained by prior case law.

Accordingly, we overrule points of error ten, 11, 16, 17, and 22.

We affirm the trial court's interlocutory order on Guo's motions to suppress.

Justice HEDGES concurring.

Justice NUCHIA dissenting.

ADELE HEDGES, Justice, concurring.

While I concur with the majority opinion and join in its disposition, I write separately to respond to the dissent's argument. I also endorse a method of "just resolution" of this and similar cases.

The dissent would exempt the State from the long-standing common law rule that in criminal cases, failure by the trial court to file findings of fact and conclusions of law, even when requested, is not error, citing the concurrence is *State v. Ross. See* 32 S.W.3d at 859–60 (Womack,

J., concurring). I believe that this position is based on an unwarranted limitation of *Ross*. The concurrence in that opinion states:

> The simple and correct resolution of this recurring problem is to say that, when the party that is challenging a trial court's ruling fails to request findings of fact, an appellate court will not reverse a ruling that could be reasonably based on adverse findings of fact.

*Id.* Note that the concurrence refers to *the party*, not *the State*. To use this reasoning to support the argument that the trial court commits reversible error when it denies the State's request for findings, as opposed to any party's request, is simply incorrect.

I agree with the *Ross* concurrence that a "just resolution" requires the imposition of a new rule that "the failure to make findings of fact, on request that was timely presented and refused over objection, is an independent ground for reversal of the trial court's judgment ..."[1] The opinion cites TEX.R. CIV. P. 297 and 299 as analogous rules for civil cases, and implicitly reasons that the distinction between civil and criminal procedure in this instance is nonsensical. The logic of its position is unassailable. Why should we rely on implicit trial court findings to support a ruling in the criminal arena, where life and liberty are at stake, when we require specific findings upon request in the civil area, where often only property is at stake?

SAM NUCHIA, Justice, dissenting.

Because I believe the trial court's actions in this case had the effect of denying the State its right to an appeal, I respectfully dissent.

## The Trial Court's Failure to File Findings of Fact

In points of error ten, 11, 16, 17, and 22, the State contends the trial court erred by not filing findings of facts and conclusions of law or designating the basis of its ruling. After the motion to suppress was granted, the State requested findings of fact and conclusions of law, and even submitted a set of proposed findings for the trial court to sign. Nonetheless, the trial court did not make any findings.

As a general rule, in the absence of trial court findings of fact, we are unable to hold that the trial court abused its discretion in granting a defendant's motion to suppress. *State v. Cardenas*, 36 S.W.3d 243, 245 (Tex.App.-Houston [1st Dist.] 2001, pet. filed); *State v. Davis*, 991 S.W.2d 882, 883 (Tex.App.-Houston [1st Dist.] 1999, no pet.). This is usually true because when the trial court rules in the defendant's favor without explanation, there is "not necessarily a 'concrete' set of facts that can be implied from such a ruling." *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000). "The trial court may have disbelieved the officer on at least one material fact, or the trial court may be in a situation in which it does not know what exactly the facts are, but it does know (on the basis of demeanor, appearance, and credibility) that they are not as the witness describes." *Id.* This is even more true in situations where the State's evidence is controverted. It could be that the judge believed the defendant, rather than the police officers, on a key piece of evidence. It could be that the trial judge did not know who to believe, but found the State's version of the facts less credible that the defendant's. Or, it could be that

---

1. On a practical note, I would prefer that appellate courts have the authority to abate criminal cases for trial court findings, rather than reverse and remand. *See Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768, 773 (Tex. 1989).

the trial judge found the State's entire case to be completely incredible.

It is true that in rare instances, we can review the trial court's ruling granting a motion to suppress, even without findings of fact. *See State v. Cardenas,* 36 S.W.3d at 245 (holding that findings of fact not necessary because trial court explicitly accepted State's facts and articulated a legal basis for its ruling); *State v. Fudge,* 42 S.W.3d 226, 230 (Tex.App.-Austin 2001, no pet.) (stating de novo review appropriate because trial court expressly found officer's testimony credible). This is not such a case. The evidence was controverted on many issues, such as whether the briefcase was opened or closed at the time the police first searched it and whether the police knew, before searching the briefcase, that it belonged to George Guo. Furthermore, even on evidence that was not controverted, such as the circumstances surrounding Guo's arrest, it is possible that the trial court simply did not believe the police officers' testimony. In the absence of findings of fact, we are unable to determine whether the trial court abused its discretion in granting Guo's motion to suppress. *Davis,* 991 S.W.2d at 883. As the majority says, it could be that the trial court did not believe the police officers on some key piece of evidence, but, as the majority does not say, it could also be that the trial court misapplied the law to the facts.

Without findings of fact, the State's right to appeal the granting of a motion to suppress is meaningless. *See* Tex.Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon Supp.2001). The legislature could not have intended to grant the State an interlocutory review of a trial court's order, only to have that review denied by a trial court's failure to make the findings necessary for the appellate court to reach the merits of the State's appeal, when requested by the State. *See Childress v. State,*

784 S.W.2d 361, 366 (Tex.Crim.App.1990) (stating court would "not presume the legislature did a useless thing."). This Court has the obligation to insure that the trial court's failure to make findings does not prevent a proper presentation of the State's interlocutory appeal. Rule 44.4 of the Texas Rules of Appellate Procedure provides:

> A court of appeals *must not affirm* or reverse a judgment or dismiss an appeal if:
>
> > (1) *the trial court's* erroneous action or *failure or refusal to act prevents the proper presentation of a case to the court of appeals;* and
> >
> > (2) the trial court can correct its action or failure to act.
>
> (B) If the circumstances described in (a) exist, *the court of appeals must direct the trial court to correct the error.* The court of appeals will then proceed as if the erroneous action or failure to act has not occurred.

Tex.R.App. P. 44.4 (emphasis added).

We are aware of cases holding that a *defendant* is not entitled to findings of fact and conclusions of law after the trial court *denies* a motion to suppress. *See Guadian v. State,* 420 S.W.2d 949, 952 (Tex.Crim. App.1967) (holding trial court did not err by refusing to make findings of fact after denying defendant's motion to suppress); *Kadlec v. State,* 704 S.W.2d 526, 528 (Tex. App.-Dallas 1986, pet. ref'd) (same). These cases are distinguishable because the defendant's right to appeal is not dependent on findings of fact made after the denial of a motion to suppress. The defendant can go to trial, and, on direct appeal, complain that the evidence he sought to suppress was erroneously admitted. Furthermore, the defendant is entitled to an instruction to the jury that it shall disregard any evidence that it finds was illegally obtained. *See* Texas Code Crim. Proc.

ANN. art. 28.23 (Vernon Pamph.2001). Thus, there is always the possibility that the jury will disagree with the trial judge's ruling on the motion to suppress and refuse to consider the evidence, even though it was admitted at the trial.

The State, however, has no such rights. The State's only opportunity for review of a trial judge's adverse ruling on a motion to suppress comes by way of its interlocutory appeal of the ruling. By failing to make findings of fact, after proper request by the State, the trial court has, effectively, insulated its ruling from appellate review.[1]

In *State v. Ross*, the State argued that trial court's could insulate their rulings on motions to suppress by merely not filing findings of fact. 32 S.W.3d at 858. The Court of Criminal Appeals responded by stating:

Our holding does nothing to limit the State's right to appeal under article 44.01(a)(5). The State is just as free to make the appeal today as it was before the decision today. *If a non-prevailing party wishes to avoid the effects of these appellate presumptions, then it should attempt to get the rationale for the trial court's ruling on the record through either a verbal explanation at the hearing or express findings of fact and conclusions of law.*

*Ross*, 32 S.W.3d at 858 (emphasis added). In this case, the State did exactly as the *Ross* court suggested—it timely requested findings of fact and conclusions of law, and even went so far as to submit proposed findings to the judge. Nevertheless, the trial court refused to make any findings.

In the concurring opinion to *Ross*, Justice Womack, joined by Justices Keller and Keasler, suggested the following solution to the continuing problem of reviewing motions to suppress without findings of fact:

The simple and correct resolution of the recurring problem is to say that, when the party that is challenging a trial court's ruling fails to request findings of fact, an appellate court will not reverse a ruling that could be reasonably based on adverse findings of fact. *If we couple this rule with a rule that the failure to make findings of fact, on request that was timely presented and refused over objection, is an independent ground for reversal of the trial court's judgment,* we will have taken a step toward the just resolution of these appeals-a resolution that is based on the reality of what happened rather than on assumptions that may be entirely fictitious.

*Ross*, 32 S.W.3d at 859–60 (Womack, J., concurring).

I agree with Judge Womack that findings of fact should be mandatory when properly and timely requested by the State. However, reversal is not required. Rule of Appellate Procedure 44.4 mandates that we abate the case to allow the trial court to remedy the problem. *See also Rocha v. State*, 16 S.W.3d 1, 10 (Tex. Crim.App.2000) (holding abatement proper when trial court erroneously fails to make findings pursuant to TEX.CODE CRIM. P. ANN. art. 38.22).

Therefore, rather than affirming the trial court's ruling, I would abate the appeal and remand the case with instructions for

---

1. The concurring opinion advocates providing findings of fact to both the State and the defendant upon timely request. However, it does not address the fact that the defendant already has several advantages over the State in the area of suppression rulings, including

(1) the right to a trial on the merits and an appeal therefrom, and (2) an instruction to the jury under Art. 28.23 of the Code of Criminal Procedure that it shall not consider evidence that it finds was illegally obtained.

the trial court to make findings of fact and conclusions of law in connection with its ruling on the motion to suppress.