In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-509 CR


____________________



KEVIN MONTEL BRUMFIELD, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court 


Jefferson County, Texas


Trial Court Cause No. 82898






O P I N I O N


 Kevin Montel Brumfield pleaded guilty without a plea bargain to the felony offense
of possession of marijuana. See Tex. Health & Safety Code Ann. § 481.121(a),(b)(4)
(Vernon Supp. 2003). The trial court sentenced Brumfield to confinement in the
Institutional Division of the Texas Department of Criminal Justice for a term of ten years. 
The four issues he presents on appeal contend the trial court erred in denying his motion
to suppress. Specifically, Brumfield argues that the stop, detention, and search of his
vehicle violated the Fourth and Fourteenth Amendments to the United States Constitution,
article one, section nine of the Texas Constitution, and article 38.23 of the Texas Code of
Criminal Procedure. He further complains the consent to search was involuntary. We
have jurisdiction to consider this appeal. Young v. State, 8 S.W.3d 656, 663 (Tex. Crim.
App. 2000).

Standard of Review


 In reviewing a motion to suppress, an appellate court gives great deference to the
trial court's determination of historical facts. Corbin v. State, 85 S.W.3d 272, 275 (Tex.
Crim. App. 2002). If the trial court does not file findings of fact, we assume the trial
court made implicit findings that support its ruling, so long as those implied findings are
supported by the record. Corbin, 85 S.W.3d at 276. We review de novo mixed questions
of law and fact that do not turn on the credibility and demeanor of a witness. Id. We
examine the evidence in the light most favorable to the trial court's ruling. Id. 

The Stop


 Brumfield first argues the police officer's stop of his vehicle was illegal; he claims
the stop was pretextual and based on racial profiling, and that there was no probable cause
or reasonable suspicion for the stop. Specifically, he argues before this court that the
traffic stop itself was illegal because an unilluminated paper license tag in the rear window
of the vehicle is not a violation of the law. Therefore, he concludes "the stop cannot be
legally justified." However, Brumfield never contended the stop based on the unlit paper
tag was illegal in his motion to suppress, in the hearing on the suppression motion, or in
the motion for new trial. At the suppression hearing, trial counsel argued to the court that
the officer could have simply issued the traffic citation, based on the unlit paper tag on a
vehicle being driven at night, and let Brumfield go. At the conclusion of the hearing, the
following discussion ensued: 

 (ATTORNEY): When he pulled up next to that vehicle . . . , he saw that
paper tag and he saw that vehicle. He saw who the occupants of the vehicle
were and he pulled them over. He could have given Mr. Brumfield a ticket,
a citation and let him go, but as he said, he was going to ask him his
questions . . . . (Emphasis added). 

 

 An officer may stop a vehicle for a traffic violation. See Walter v. State, 28
S.W.3d 538, 542 (Tex. Crim. App. 2000). No additional probable cause or reasonable
suspicion is required. See id. ("As a general matter, the Supreme Court has recognized
that the decision to stop an automobile is reasonable where the police have probable cause
to believe that a traffic violation has occurred.") (citing Whren v. United States, 517 U.S.
806, 810, 116 S.Ct. 1772, 135 L.Ed.2d 89 (1996)). The officer testified he stopped the
car because, as the car went past him, he noticed there was no rear license plate. After
the vehicle stopped, Officer Fountain pulled up near the car and observed an unlit paper
tag in the rear window. Fountain testified the unlit paper tag was a traffic violation. 
Brumfield did not present to the trial court any claim that there was no traffic violation. 
The argument is waived and may not be asserted for the first time on appeal. See Hughes
v. State, 878 S.W.2d 142, 151 (Tex. Crim. App. 1993) (op. on reh'g) (error preservation
a "systemic requirement" which appellate court should address). The Court of Criminal
Appeals recently stated that the Court has "held . . . that it violates 'ordinary notions of
procedural default' for a Court of Appeals to reverse a trial court's decision on a legal
theory not presented to the trial court by the complaining party." Hailey v. State, 87
S.W.3d 118, 122 (Tex. Crim. App. 2002). 

 At the hearing on the motion to suppress, Brumfield claimed Officer Fountain
engaged in racial profiling. The only evidence before the trial court was Officer
Fountain's testimony that a person's race has no bearing on any questions he asks during
a traffic stop. The judge was free to believe that testimony. Issue one is overruled.

 The Detention


 Brumfield's second issue challenges the detention as being without reasonable
suspicion or without probable cause. He claims the officer based the detention on the
allegedly inconsistent answers of Brumfield and his passenger to a single question. At the
suppression hearing, Officer Fountain testified that Brumfield said he had been to Houston
to take his girlfriend's sister back to school. Brumfield gave the time of arrival in Houston
as being around 3:00 or 4:00 p.m. The officer then talked to the passenger, Alicia
Williams, who indicated she and Brumfield took her sister back at approximately 9:00
p.m., a difference of some five or six hours. Fountain testified the time difference aroused
his suspicions. The officer returned to Brumfield who again said the time the sister was
dropped off was approximately 3:00 or 4:00 p.m. Officer Fountain testified "[w]e spoke
briefly at which time that I asked for consent to search the vehicle they were in." After
Brumfield gave his consent to search, Fountain then approached the vehicle and asked Ms.
Williams to step out. The officer testified he could see sticking out from under the front
edge of her seat a clear plastic-like, one gallon zip-lock bag containing a large sum of
money. Fountain retrieved it and proceeded to search the trunk. In one of the two spare
tires, he found twenty-nine duct-taped wrapped bundles that he concluded, based on his
training and experience, contained contraband. 

 During a traffic stop the officer may ask about the driver's destination and purpose
of travel, although neither the driver nor the passenger is compelled to answer these
questions. See State v. Cardenas, 36 S.W.3d 243, 246 (Tex. App.--Houston [1st Dist.]
2001, pet. ref'd). Nothing in the record indicates Brumfield or his passenger did not wish
or refused to answer police questions, and the record does not indicate the temporary
detention lasted longer than was necessary to effectuate the purpose of the stop. Officer
Fountain posed questions about the purpose of the trip and time frames associated with the
trip, as the law permits him to do, and received inconsistent answers. He then asked for
consent to search the vehicle, and Brumfield gave it. Under the circumstances in this case
-- inconsistent answers followed by request to search and permission to search -- we find
that Officer Fountain's questions followed by the request for consent to search were
proper. See Spight v. State, 76 S.W.3d 761, 767-68 (Tex. App.--Houston [1st Dist.] 2002,
no pet.) (It is not unreasonable per se for an officer to request a consent to search after the
completion of a traffic stop.). See also Cardenas, 36 S.W.3d at 246 (During valid traffic
stop, officer had right to ask about the driver's destination and purpose; when officer asked
for consent to search, he had not yet completed his traffic investigation, and the request
was proper.). Issue two is overruled. 

Consent to Search 


 Brumfield contends in issue three that the consent to search "was not shown to have
been obtained by means sufficiently distinguishable to be purged of the primary taint [of]
the illegal stop and [detention]." Brumfield does not assert he failed to give consent. His
claim is that his consent, given after an illegal traffic stop and detention, is not
"sufficiently attenuated to permit" the use of the evidence obtained as a result of the
search. Following the stop, on which error was not preserved, Officer Fountain began to
question Brumfield and his passenger about their trip to Houston and noted the
inconsistency in their accounts. As indicated above, the questions during the temporary
detention were permissible. Under the circumstances of this case, there is no illegal stop
or illegal detention properly before us. Consequently, an attenuation analysis is not
required. Issue three is overruled.

The Scope of the Search


 In his final issue, Brumfield argues the search exceeded the scope of his consent. 
Brumfield consented to a search of the vehicle; nothing in the record shows his consent
was restricted to certain parts of the vehicle. After finding the bag containing the money
inside the vehicle, the officer opened the trunk with the key obtained from the key ring. 
Inside the trunk were two spare tires, one of which did not appear to Officer Fountain to
be a car tire. He grabbed it, found it was heavy, shook it, and felt bundles in it. Based
on his training and experience, Officer Fountain believed the tire contained contraband,
cut open the tire, and found "a large amount of marijuana." 

 When a person voluntarily consents to a search, the officer's authority to perform
the search is not unlimited. Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114
L.Ed.2d 297, 302-03 (1991). The extent of the search is limited to the scope of the
consent given, and the scope of the consent is generally defined by its expressed object. 
Id. In measuring the scope of consent, the standard is that of objective reasonableness,
i.e., what a reasonable person would have understood by the exchange between the officer
and the individual. Id. Here, Brumfield gave consent to search the vehicle, the express
object of the search. "Unless an officer's request, or a suspect's consent, limits a search
to a particular area of the vehicle, such as the passenger compartment or trunk, we believe
that a request for a search 'of the car' reasonably includes all areas of the vehicle and
excludes none." Simpson v. State, 29 S.W.3d 324, 330 (Tex. App.--[14th Dist.] 2000,
pet. ref'd). Brumfield's consent did not expressly or implicitly exclude the trunk. In
searching the trunk under the facts in this case, the officer did not exceed the scope of the
consent.

 Appellant also argues a tire inside the trunk is like a locked suitcase in a trunk and 
not an integral component of the trunk. We need not decide the matter. Once Fountain
felt the bundles inside the tire, and concluded, based on his training and experience, that
the material was probably contraband, he had probable cause to continue the search. Issue
four is overruled. Appellant's conviction is affirmed.

 AFFIRMED. 

 __________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on September 30, 2002

Opinion Delivered December 19, 2002

Do Not Publish


Before Walker, C.J., Burgess, and Gaultney, JJ.

DISSENTING OPINION


 I would sustain issues one and three. 

 Issue one states: "The trial court erred by denying appellant's motion to suppress
for the reason that the "stop" of appellant's vehicle was in violation of the fourth and
fourteenth amendments to the United States Constitution, Article 1, Section 9 of the Texas
Constitution and Article 38.23 of the Texas Code of Criminal Procedure, in that said stop
was without reasonable suspicion or probable cause." 

 The majority emphasizes what it considers to be Brumfield's waiver of his claim of
an illegal traffic stop. However, the State did not raise a waiver argument, but instead
noted that "[t]he strength of Appellant's appeal rises and falls on the legality of the initial
stop by the officer." And, indeed, as the Texas Court of Criminal Appeals has stated
regarding traffic stops, "[a]s long as an actual violation occurs, law enforcement officials
are free to enforce the laws and detain a person for that violation, . . . [with] the
appropriate limitation of an officer's discretion, under the Fourth Amendment, . . . [being]
the existence of a law and the actual commission of the offense. . . ." Garcia v. State, 827
S.W.2d 937, 944 (Tex. Crim. App. 1992). 

 I, like the State, do not believe a waiver argument to be appropriate. In his motion
to suppress, Brumfield argued that his rights under the Fourth Amendment were violated
by the police officer. In argument on the motion to suppress, defense counsel maintained
that the Fourth Amendment and cases decided under it set parameters regarding
"unreasonable stops, searches and seizures[,]" and determine how far the government may
go in "invading a person's privacy." 

 Rather than argue waiver, the State contends that Sergeant Fountain made a
legitimate stop. The State maintains that Sergeant Fountain's testimony establishes that he
stopped Brumfield for violation of Article 547.322(g) of the Texas Transportation Code,
which requires that a taillamp, "including a separate lamp used to illuminate a rear license
plate, must emit a light when a headlamp or auxiliary driving lamp is lighted." And if
Sergeant Fountain's testimony had ended with his direct examination, I might agree the
stop was proper. But, on cross examination Sergeant Fountain stated that, before he
activated his emergency lights, he saw the paper tag in the back window. However, as the
tag "was not illuminated by a white light as required by the Texas Traffic Code," he
thought Brumfield was in violation of the Traffic Code. The State does not cite to a
section of the Traffic Code that requires illumination of paper tags in rear view windows,
and I have found none. (1)

 The majority correctly notes that an officer may lawfully stop a motorist who
commits a traffic violation. See Garcia, 827 S.W.2d at 944. However, an officer's
incorrect belief that a motorist is in violation of state traffic laws is insufficient to justify
a vehicle stop. United States v. Lopez-Valdez, 178 F.3d 282, 288 (5th Cir. 1999); United
States v. Miller, 146 F.3d 274, 279 (5th Cir. 1998); Trahan v. State, 16 S.W.3d 146, 147
(Tex. App.--Beaumont 2000, no pet.).

 The Whren rule cited by the majority allows law enforcement officers "broad
leeway to conduct searches and seizures regardless of whether their subjective intent
corresponds to the legal justifications for their actions. But, the flip side of that leeway
is that the legal justification must be objectively grounded." Miller, 146 F.3d at 279
(footnote omitted)(citing Whren v. United States, 517 U.S. 806, 812-14, 116 S.Ct. 1769,
135 L.Ed.2d 89 (1996)). Here, the totality of Sergeant Fountain's testimony shows that
his legal justification for stopping Brumfield was not objectively grounded.

 Since Brumfield's consent to search was the fruit of an illegal stop, the evidence
obtained should be suppressed. See Viveros v. State, 828 S.W.2d 2, 4 (Tex. Crim. App.
1992); Ehrhart v. State, 9 S.W.3d 929, 931 (Tex. App.--Beaumont 2000, no pet.). I
would hold that Brumfield's Fourth Amendment rights were violated and that the trial
court erred in denying his motion to suppress. I would sustain issues one and three.




 DON BURGESS

 Justice


Dissent Delivered

December 19, 2002

Do Not Publish
1. Section 503.069 of the Texas Transportation Code requires
temporary cardboard tags to be displayed in accordance with
the rules of the Motor Vehicle Board of the Texas Department
of Transportation. See Tex. Transp. Code Ann. §§503.069; 503.001
(Vernon Supp. 2003); see Tex. Rev. Civ. Stat. Ann. art. 4413(36),
§1.03(2)(Vernon Supp. 2003). The Motor Vehicle Board
regulations state that temporary cardboard tags may be
displayed either in the rear window or on the rear license
plate holder of unregistered vehicles. When displayed in the
rear window, the tag shall be attached in such a manner that
it is clearly visible and legible when viewed from the rear of
the vehicle. See 16 Tex. Admin. Code § 111.9(b) (2002).