Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

FRANKIE TUCKER,
)
 No. 08-02-00178-CR

)


 Appellant,
)
 Appeal from

)
 

v.
)
 385th District Court

)


THE STATE OF TEXAS,
)
 of Midland County, Texas

)


 Appellee.
)
 (TC# CR27187)


MEMORANDUM OPINION



 Frankie Tucker appeals from his conviction for possession of more than one gram but less
than four grams of cocaine, enhanced as an habitual offender. Appellant waived his right to a jury
trial and tried his case to the trial court. The court found Appellant guilty, found both enhancement
paragraphs true, and assessed punishment at imprisonment for a term of thirty years. We affirm.

FACTUAL SUMMARY


 Officer Tim Stone of the Midland Police Department was on patrol in a high crime area of
Midland when he observed a Ford Escort which he had seen earlier in the day cruising through the
neighborhood. When the driver committed a traffic violation by failing to properly signal an intent
to make a left turn, Stone began to follow with the intention of making a stop for the traffic violation. 
Before he could stop the vehicle, however, the driver made another turn without properly signaling. 
Stone then turned on his overhead lights and stopped the vehicle. 

 Stone approached the Escort and the driver--Appellant--produced his driver's license. Stone
knew that Appellant was a gang member and he believed him to be a dangerous and violent person. 
Appellant's younger brother, Sammie Tucker, was a passenger in the car. Stone observed that
Appellant's teeth were chattering as he spoke and he was sweating excessively. Concerned by
Appellant's extreme nervousness during this initial contact, Stone asked whether there were any
knives or other weapons in the car. When Appellant told him there was a utility knife in his pocket,
Stone told him to leave it in his pocket. Because Stone knew from prior experience that knives were
Appellant's "weapon of choice," he backed away from the Escort and called for backup to assist him. 
The backup unit arrived approximately five minutes after being dispatched and only nine minutes
after Stone first made the stop. 

 After the backup unit arrived, Stone asked Appellant to get out of the car and step back by
the patrol car. He conducted a pat down search and found not only a utility knife but also a double-bladed lock blade knife. Stone then asked Appellant whether he had anything illegal on his person,
and Appellant replied that he did not. Appellant consented when Stone asked if he could search the
inside of Appellant's pockets. Inside of Appellant's shirt pocket, Stone found a short straw
containing cocaine residue. Stone arrested Appellant for possession of drug paraphernalia and
placed him handcuffed in the backseat of the patrol car. During the subsequent search of the Escort,
Stone found a small bag of cocaine on the driver's seat near the seat belt attachment. He went back
to the patrol car to inform Appellant and give him his Miranda (1) warnings. He discovered a second
baggie of cocaine next to Appellant's feet. While conducting a more thorough search of Appellant,
a third baggie of cocaine fell out of Appellant's left pant leg. A fourth baggie of cocaine was
subsequently found during a strip search of Appellant at the jail. 

 Appellant filed a motion to suppress evidence obtained during the traffic stop because the
detention was not supported by reasonable suspicion under Terry v. Ohio. (2) The trial court did not
conduct a hearing on the motion to suppress but instead considered the issue during the bench trial.

The court overruled Appellant's objections to admission of the evidence seized as a result of the
stop, and ultimately found Appellant guilty as charged in the indictment. 

LEGALITY OF THE DETENTION AND SEIZURE


 In his sole point of error, Appellant argues that the trial court erred in failing to suppress the
evidence seized from his person and vehicle. He does not contest the legality of the initial stop but
contends that the continued detention was not supported by reasonable suspicion. Once he gave his
driver's license to the officer, Appellant reasons that the purpose of the stop had been satisfied and
the officer needed additional reasonable suspicion to justify any further detention. 

The Standard of Review


 As we have noted, the trial court did not rule on Appellant's motion to suppress prior to trial,
but instead carried the issue over to trial. Appellant objected to the evidence at trial on the same
grounds as alleged in his written motion to suppress. The State urges that because the trial court did
not rule on the suppression motion before trial, the issue should be reviewed for an abuse of
discretion rather than under the bifurcated standard applied to motions to suppress. It is a common
practice for trial courts to consider pretrial motions to suppress in the context of a bench trial rather
than conducting a separate hearing on the suppression issue. A motion to suppress is nothing more
than a specialized objection to the admissibility of evidence. Galitz v. State, 617 S.W.2d 949, 952
n.10 (Tex.Crim.App. 1981). We see no reason to apply a different standard of review to this issue
simply because the trial court carried the suppression issue and considered it in the course of the
bench trial.

 We review a trial court's ruling on a motion to suppress based upon an alleged lack of
probable cause or reasonable suspicion using the bifurcated standard of review articulated in Guzman
v. State, 955 S.W.2d 85 (Tex.Crim.App. 1997). See Carmouche v. State, 10 S.W.3d 323, 327
(Tex.Crim.App. 2000); Krug v. State, 86 S.W.3d 764, 765 (Tex.App.--El Paso 2002, pet. ref'd). 
Under this standard, we afford almost total deference to the trial court's express or implied
determination of historical facts and review de novo the court's application of the law pertaining to
search and seizure to those facts. State v. Ross, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000);
Carmouche, 10 S.W.3d at 327; Krug, 86 S .W.3d at 765. As there were no explicit findings of
historical facts by the trial court, the evidence must be viewed in a light most favorable to the trial
court's ruling. Carmouche, 10 S.W.3d at 327.

Traffic Stop


 A routine traffic stop resembles an investigative detention. Berkemer v. McCarty, 468 U.S.
420, 439, 104 S.Ct. 3138, 3149-50, 82 L.Ed.2d 312 (1984); State v. Cardenas, 36 S.W.3d 243, 246
(Tex.App.--Houston [1st Dist.] 2001, pet. ref'd). To determine the reasonableness of an
investigative detention, we apply the test articulated in Terry v. Ohio: (1) whether the officer's action
was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances
that justified the initial interference. Terry v. Ohio, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879, 20
L.Ed.2d 889 (1968); Davis v. State, 947 S.W.2d 240, 244 (Tex.Crim .App. 1997). The United States
Supreme Court has held that, as a general matter, the decision to stop an automobile is reasonable
where the police have probable cause to believe that a traffic violation has occurred. Whren v.
United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). Under Texas law,
a peace officer is authorized to arrest a driver found committing a traffic violation other than
speeding. See Tex.Code Crim.Proc.Ann. art. 14.01(b)(Vernon 1977)(a peace officer may arrest
an offender without a warrant for any offense committed in his presence or within his view);
Tex.Transp.Code Ann. § 543.001 (Vernon 1999)(general authorization to arrest); Tex.Transp.
Code Ann. § 543.004 (exception for speeding offense). Therefore, traffic violations committed in
an officer's presence provide probable cause to stop the vehicle and detain the driver. McVickers
v. State, 874 S.W.2d 662, 664 (Tex.Crim.App. 1993); Hargrove v. State, 40 S.W.3d 556, 559
(Tex.App.--Houston [14th Dist.] 2001, pet. ref'd)(traffic violation, i.e., failure to signal lane change,
committed in officer's presence provides probable cause and justifies detention); see also Whren,
517 U.S. at 810, 116 S.Ct. at 1772. 

 A search that is reasonable at its inception may violate the Fourth Amendment by virtue of
its excessive intensity and scope. See Davis v. State, 947 S.W.2d 240, 243 (Tex.Crim.App.
1997)(holding that after officers determined the driver was not intoxicated, continued detention of
driver and search of his car without his consent was unreasonable where not supported by reasonable
suspicion of other criminal activity). Under the second Terry guideline, an investigative detention
must be temporary and last no longer than is necessary to effectuate the purpose of the stop. See
Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983); Davis, 947
S.W.2d at 243. Once the reason for the stop has been satisfied, the stop may not be used as a fishing
expedition for unrelated criminal activity. See Ohio v. Robinette, 519 U.S. 33, 41, 117 S.Ct. 417,
422, 136 L.Ed.2d 347 (1996)(Ginsburg, J., concurring); Davis, 947 S.W.2d at 243. In analyzing the
reasonableness of the detention, we keep in mind that during a routine traffic stop, an officer has the
right to check for outstanding warrants and request: (1) a driver's license; (2) insurance papers; and
(3) identification. See Davis, 947 S.W.2d at 245. The officer may also question the driver about
ownership of the vehicle, the driver's destination, and the purpose of the trip. See Powell v. State,
5 S.W.3d 369, 377 (Tex.App.--Texarkana 1999, pet. ref'd), cert. denied, Powell v. Texas, 529 U.S.
1116, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000). After making a stop for a traffic violation, an officer
may rely on all of the facts ascertained during the course of his contact with a defendant to develop
articulable facts that would justify a continued detention. Sims v. State, 98 S.W.3d 292, 295
(Tex.App.--Houston [1st Dist.] 2003, pet. ref'd); Powell, 5 S.W.3d at 377.

 Once a valid traffic stop is made, officers at the scene are entitled to take sufficient measures
to guarantee their safety. Goodwin v. State, 799 S.W.2d 719, 727 (Tex.Crim.App. 1990), cert.
denied, 501 U.S. 1259, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991); see Terry v. Ohio, 392 U.S. at 23,
88 S.Ct. at 1881 (noting that it would be unreasonable to require that police officers take unnecessary
risks in the performance of their duties). Police officers may order persons out of an automobile
during a stop for a traffic violation, and they may frisk those persons for weapons if there is a
reasonable belief they are armed and dangerous. Michigan v. Long, 463 U.S. 1032, 1048-49, 103
S.Ct. 3469, 3480-81, 77 L.Ed.2d 1201 (1983); Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S.Ct.
330, 333, 54 L.Ed.2d 331 (1977); Goodwin, 799 S.W.2d at 727.

 Appellant does not allege that the officer lacked probable cause to believe he had committed
two traffic violations. Instead, he argues that once the purpose of the traffic stop had been
effectuated, the continued detention was unreasonable and not supported by reasonable suspicion. 
As evidence that the purpose of the stop had been completed, Appellant points to the fact that he had
given his license to the officer. We do not agree that the investigation of the traffic offenses had
been completed simply because Appellant had provided his driver's license to Stone. There is no
evidence that Appellant provided his insurance information to Stone or that Stone had completed
a check for outstanding warrants. The evidence at the suppression hearing showed that Stone, due
to concerns for his safety, temporarily suspended his investigation of the traffic violations until the
backup officer arrived. This is a reasonable measure given Appellant's extreme nervousness,
Stone's knowledge of Appellant's propensity for violence, and Appellant's admission that he
possessed a weapon, and it required Appellant to wait on the roadside for only a few minutes. Once
the backup officer arrived, Stone removed Appellant from the car and conducted a weapons frisk. 
At that point, Appellant consented to a search of his pockets and Stone found what he believed to
be narcotics paraphernalia. A consensual search is an exception to the requirement that a search be
based upon a warrant supported by probable cause. Reasor v. State, 12 S.W.3d 813, 817
(Tex.Crim.App. 2000). The search of Appellant's car following the arrest for possession of narcotics
paraphernalia is valid as a search incident to arrest. New York v. Belton, 453 U.S. 454, 460, 101
S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); State v. Ballard, 987 S.W.2d 889, 892 (Tex.Crim.App.
1999). We overrule Appellant's sole issue and affirm the judgment of the trial court.



July 24, 2003 /s/ Ann Crawford McClure 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.


(Do Not Publish)
1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
2. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).