# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00005-CR

**Mario Gonzalez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. 007834, HONORABLE JULIE KOCUREK, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

Tom Owens, an Austin police officer, responds to a 911 call for assistance. He is advised by the dispatcher that the call originated within the Gonzalez apartment. Upon arriving at the apartment complex, Owens approaches the closed door of the apartment and hears voices around the corner. Instead of immediately attempting to enter the apartment, he follows the voices and finds Alexander Gonzalez in a common area bleeding from a stab wound to the chest. With him was Arleen Aleman, who had blood on her clothes. Gonzalez is agitated and evasive. After EMS and another officer arrive, he spends considerable time attempting to question both Alexander Gonzalez and Aleman, but the pair will not disclose even a most basic account of how Alexander Gonzalez was injured or if any other persons were involved.

As EMS begins to take him away, the evasive and uncooperative Gonzalez specifically insists that Aleman lock his apartment.

Applying well-established Fourth Amendment jurisprudence and the objective standard of reasonableness under the emergency doctrine, I cannot agree with the majority because I believe the emergency doctrine justified the search in this case. An appellate court is to apply an objective standard of reasonableness, taking into account all of the facts and circumstances known to police at the time, when determining if a search is justified under the emergency doctrine. *See Laney v. State*, 117 S.W.3d 854, 858-59 (Tex. Crim. App. 2003). Under this test, we must determine: (1) whether the officer=s entry into the apartment was totally divorced from the detection, investigation, or acquisition of evidence; (2) whether there was an immediate, objectively reasonable belief that it was necessary to enter the apartment to protect or preserve life or to avoid serious injury; and (3) whether the scope of the search was strictly circumscribed by the facts of the emergency. *See id*. at 861-62.

I agree with the majority on the first *Laney* prongСthe officer=s entry in this case was totally divorced from a search for evidence. *See id*. In relation to the third prong, I would find that the scope of the search was strictly limited by the facts of the emergency. *See id*. The officer entered the apartment and observed blood on one of the chairs. He then went into the kitchen and saw in the sink a knife with blood on its tip. He went into the bedroom and saw in plain view on the dresser a scale, powder, and a straw. There was also a plastic bag with white powder in an open drawer. After making these observations, the officer left the apartment, locked the door, and reported to his supervisor. All this evidence is admissible if the officer=s warrantless search was justified. *See Brimage v. State*, 918 S.W.2d 466, 501 n.5 (Tex. Crim. App. 1996) (when police enter residence pursuant to emergency doctrine, evidence in plain view may

be seized); *see also Nilson v. State*, 106 S.W.3d 869, 872 (Tex. App.CDallas 2003, no pet.) (where illegal warrantless search provides basis for search warrant, evidence obtained pursuant to search warrant suppressed); *State v. Guo*, 64 S.W.3d 662, 668 (Tex. App.CHouston [1st Dist.] 2001, no pet.).

Thus, the only issue in this case is whether there was an immediate, objectively reasonable belief that it was necessary to enter the apartment to protect or preserve life or to avoid serious injury. *Id*. The emergency doctrine requires that we not second-guess officers= actions through 20-20 hindsight or theoretical prisms. Rather, we are to apply the standard in a way that avoids chilling our law enforcement officers from entering property when they reasonably believe it necessary to protect or preserve life. The existence of some other conceivable explanation for Alexander Gonzalez=s actions does not detract from the facts as they appeared to the officer at the time he decided to enter the apartment. He had been called to apartment 114 but had yet to enter. Instead, he attended to Alexander Gonzalez, who was outside the apartment. He was never able to determine what had happened. I would find that these facts made it reasonable to conclude that Alexander Gonzalez was the victim of a violent crime and that another victim might have been located in the apartment. As a result, I would find the search in this case justified under the emergency doctrine.

I would affirm the trial court=s denial of Mario Gonzalez=s motion to suppress. I respectfully dissent.

_____

Bob Pemberton, Justice

3

Before Justices Kidd, B. A. Smith and Pemberton

Filed:   October 28, 2004