MARY'S OPINION HEADING 







                                                                                    NO. 12-03-00380-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
§APPEAL FROM THE 
IN THE MATTER OF
§COUNTY COURT AT LAW #3
R.J., A JUVENILE
§SMITH COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant R.J., a juvenile, appeals the denial of his motion to suppress. In two issues, he
contends that the officer exceeded the scope of the traffic stop and that his consent to search was not
voluntary. We reverse and remand.
 
Background
            During a routine traffic stop, Tyler Police Officer James Freeman (“Freeman”) seized
marijuana from a vehicle driven by R.J. Officer Michael Kieny (“Kieny”) was with Freeman during
the stop, and a passenger traveling in R.J.’s vehicle was also present. The State filed an Original
Petition alleging that R.J. had possessed marijuana in the amount of two ounces or less. R.J. filed
a motion to suppress, which was subsequently heard by the trial court.
            At the hearing, Freeman testified that he observed a blue Dodge Dynasty traveling westbound
on Gentry Parkway. He noticed that the registration was expired and that a paper dealer’s
registration tag appeared to be improperly completed. Freeman initiated a traffic stop and asked the
driver, R.J., for his driver’s license and insurance information. R.J. could not produce the insurance
information for the vehicle. Freeman decided to issue R.J. a warning citation for the improperly-completed dealer’s tag and for failure to produce proof of financial responsibility. Freeman wrote
the citation and asked R.J. to step from the car and sign it. After R.J. complied, Freeman asked him
if there was any contraband in the vehicle. R. J. replied that there was none. However, Freeman
stated that R.J. was evasive, became nervous, and would not look directly at Freeman when he
answered the question.
            Freeman then asked for permission to search the vehicle. R.J. asked if the law required him
to search the vehicle, and Freeman testified that he told R.J. he could deny the request. R.J. denied
consent for the search. At that point, Freeman decided that, based on R.J.’s previous conduct, he
would call out the canine officer to sniff around the vehicle. If the dog “hit” on any scent coming
from the vehicle, they would have probable cause to search. After calling for the canine officer,
Freeman explained this procedure to R. J. and asked R.J. whether there was any marijuana in the
vehicle. R.J. told him there was a small amount in a compartment above the rear view mirror. The
passenger in the vehicle admitted that some of the marijuana was his as well. The officers arrested
both R.J. and his passenger.
            The court denied R.J.’s motion to suppress. R.J. subsequently pleaded true to the charge and
was placed on probation for a period of six months. This appeal followed. R.J. contends on appeal
that (1) the officer lacked reasonable suspicion to detain him after the purpose of the traffic stop was
completed and (2) his consent to the search of his vehicle was involuntary.
 
Standard of Review
            We review the denial of a motion to suppress in a juvenile proceeding for an abuse of
discretion. See In re R.J.H., 79 S.W.3d 1, 6 (Tex. 2002); see also In re D.G., 96 S.W.3d 465, 467
(Tex. App.–Austin 2002, no pet.). In conducting our review, we use a bifurcated standard. See
R.J.H., 79 S.W.3d at 6. We give almost total deference to the trial court’s findings of historical fact
that the record supports, especially when the court’s fact findings are based on an evaluation of
credibility and demeanor. In re L.M., 993 S.W.2d 276, 286 (Tex. App.–Austin 1999, pet. denied). 
We afford the same amount of deference to the trial court’s rulings on “application of law to fact
questions,” also known as “mixed questions of law and fact,” if the resolution of those ultimate
questions turns on an evaluation of credibility and demeanor. Id. However, we review de novo
“mixed questions of law and fact” where the resolution is not restricted to a resolution of credibility
and demeanor. Id. In the case at hand, there is no dispute about the facts or credibility of witnesses.
Therefore, we review de novo the trial court’s determination of reasonable suspicion and
voluntariness of consent.
            A trial judge is not required to make written findings of fact in a juvenile case. R.J.H., 79
S.W.3d at 7. Here, neither the State nor R.J. requested written findings. Absent findings of fact, we
view the record in the light most favorable to the trial court’s ruling. Id. We may infer all findings
necessary to support the trial court’s ruling and must defer to those findings. D.G., 96 S.W.3d at
467. We must sustain a ruling that is reasonably supported by the record and is correct on any theory
of law applicable to the case. Id. 
 
Reasonableness of Investigative Detention
            In his first issue, R.J. contends the trial court should have granted his motion to suppress
because Freeman exceeded the permissible scope of the traffic stop. Consequently, his argument
continues, his continued detention violated the Fourth Amendment of the United States Constitution
and Article I, Section 9 of the Texas Constitution. The State argues that the motion to suppress was
properly denied because R.J. was temporarily detained for the traffic stop when Freeman asked him
if he had drugs in the car. In addition, the State contends that Freeman did not exceed the purpose
of the stop.
Reasonable Suspicion Prior to Issuance of Warning Citation
            When a traffic violation is committed within an officer’s view, the officer may lawfully stop
and detain a person for the violation. Walter v. State, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000);
see also Tex. Trans. Code Ann. § 543.001 (Vernon 1999) (“Any peace officer may arrest without
warrant a person found committing a violation of [Subtitle C. Rules of the Road].”). A routine
traffic stop resembles an investigative detention. State v. Cardenas, 36 S.W.3d 243, 246 (Tex.
App.—Houston [1st Dist.] 2001, pet. ref’d) (citations omitted). An investigative detention is a
seizure. Francis v. State, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). Therefore, a traffic stop
must be reasonable under the United States and Texas Constitutions. See U.S. Const. amend. IV;
Tex. Const. art. I, § 9. 
            To determine the reasonableness of an investigative detention, we apply the Terry test: (1)
whether the officer’s action was justified at its inception and (2) whether it was reasonably related
in scope to the circumstances that justified the initial interference.


 Cardenas, 36 S.W.3d at 246
(citing Terry v. Ohio, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Thus, a traffic
stop must last no longer than is necessary to carry out the purpose of the stop. Florida v. Royer, 460
U.S. 491, 500, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229 (1983); Davis v. State, 947 S.W.2d 240, 245
(Tex. Crim. App. 1997); see also Tex. Trans. Code Ann. § 543.005 (Vernon Supp. 2004-2005)
(officer shall promptly release person cited for traffic violation who signs promise to appear). Once
the reason for the detention has been satisfied, the detention may not be used as a “fishing expedition
for unrelated criminal activity.” Davis, 947 S.W.2d at 245 (quoting Ohio v. Robinette, 519 U.S. 33,
41, 117 S. Ct. 417, 422, 136 L. Ed. 2d 347 (1996) (Ginsberg, J., concurring)). 
            If, before concluding the initial investigation, the officer develops reasonable suspicion to
believe another offense is being committed, further detention is justified. Powell, 5 S.W.3d 369, 377
(Tex. App.–Texarkana 1999, pet. ref’d). Specifically, the officer must have a reasonable suspicion
that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the
detainee with the unusual activity, and some indication that the unusual activity is related to a crime. 
Id. at 376 (citing Davis, 947 S.W.2d at 244). Reasonable suspicion is determined based on the
totality of the circumstances. Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). Absent
reasonable suspicion, the officer cannot continue the detention or questioning after the conclusion
of the initial investigation. Cardenas, 36 S.W.3d at 246; Davis, 947 S.W.2d at 243. An
investigative detention that is not based on reasonable suspicion violates the constitutional
prohibitions against unreasonable seizures. Powell, 5 S.W.3d at 369 (citing Davis, 947 S.W.2d at
243). 
Analysis
            In the case at hand, the validity of the stop is undisputed. Consequently, the first prong of
Terry is satisfied. However, R.J. complains that once Freeman decided to issue the warning citation,
the purpose of the stop was completed and he should have been allowed to leave. This argument
relates to the second prong of Terry. Therefore, we must decide whether, prior to the conclusion of
the initial investigation, Freeman had reasonable suspicion that another offense was being
committed. See Terry, 392 U.S. at 19-20, 88 S. Ct. at 1878; Powell, 5 S.W.3d at 377. 
            Freeman testified that the basis for the stop was the improperly-completed dealer’s tag. The
record reveals, and the State acknowledges in its brief, that at the time Freeman asked R.J. about the
presence of contraband, Freeman had written the warning citation and R.J. had signed it. Therefore,
Freeman’s investigation of the traffic offense, and thus the purpose of the traffic stop, had been
completed at the time Freeman asked R.J. about contraband. See McQuarters v. State, 58 S.W.3d
250, 257 (Tex. App.–Fort Worth 2001, pet. ref’d) (issuance of warnings for traffic violations
concluded purpose of original stop).
            Freeman’s testimony at the suppression hearing does not indicate that he developed
reasonable suspicion prior to the issuance of the warning citation. To the contrary, when asked on
direct examination about his reason for asking R.J. about the presence of contraband, Freeman
replied, “I generally ask everybody I pull over. You never know sometimes. Some say yes and you
never know what you’re going to get.” The only facts Freeman articulated to justify R.J.’s continued
detention were that R. J. (1) was evasive in answering the question, (2) became nervous, and (3) did
not look directly at Freeman when he answered. This testimony relates only to any reasonable
suspicion Freeman may have developed after the citation was issued. Therefore, based on the record
before us, we conclude that Freeman’s continued detention of R.J. was not supported by any
reasonable suspicion developed by Freeman before the purpose of the traffic stop was completed. 
See St. George v. State, Nos. 02-03-00421-22-CR, 2004 WL 1944779, at *6 (Tex. App.–Fort Worth
Aug. 31, 2004, no pet.) (reasonable suspicion developed after purpose of traffic stop completed
insufficient to justify continued detention). However, our inquiry does not end here.
Reasonable Suspicion After Denial of Consent to Search
            The United States Supreme Court has held that after completing the purpose of a traffic stop,
an officer’s continued detention of a driver and a request to search the detainee’s car was reasonable
where consent was given, even though no circumstances were noted that would have constituted
reasonable suspicion of any criminal activity. United States v. Robinette, 519 U.S. 33, 36, 117 S.
Ct. 417, 420-21, 136 L. Ed. 2d 347 (1996); see also James v. State, 102 S.W.3d 162, 173 (Tex.
App.–Fort Worth 2003, pet. ref’d) (not unreasonable per se to request consent to search after a traffic
stop). An officer may request consent to search a vehicle after the purpose of the traffic stop has
been accomplished as long as it is reasonable under the circumstances and the officer has not
conveyed a message that compliance with the officer’s request is required. Leach v. State, 35
S.W.3d 232, 235-36 (Tex. App.–Austin 2000, no pet.). If consent is refused, then the officer must
have reasonable suspicion that some criminal activity exists to continue the detention. Simpson v.
State, 29 S.W.3d 324, 328 (Tex. App.–Houston [14th Dist.] 2000, pet. ref’d). 
            To establish reasonable suspicion, an officer must be able to articulate something more than
an inchoate and unparticularized suspicion or hunch. See United States v. Sokolow, 490 U.S. 1, 7,
S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989) (quoting Terry, 392 U.S. at 30). However, the fact that
an officer does not have in mind the reasons that justify the action does not invalidate the action as
long as the circumstances justify it. Robinette, 519 U.S. at 36, 117 S. Ct. at 420-21. The
determination of reasonable suspicion must be based on commonsense judgments and inferences
about human behavior. See Illinois v. Wardlow, 528 U.S. 119, 125, 120 S. Ct. 673, 676, 145 L. Ed.
2d 570 (2000). 
Analysis
            In the instant case, Freeman described the following exchange that occurred between
Freeman and R.J. after R.J. signed the warning citation:
 
PROSECUTOR:                Q.          So you had [R.J.] step out of the vehicle. Did you have any other
communication with [R.J.] at that point?
 
OFFICER:                         A.          I asked [R.J.] if there was any contraband in
the vehicle, guns, knives, drugs, anything of
that nature. And he was evasive in his
answering of the question. Becoming very
nervous. He could not look at me directly
when he answered the questions.

                                                         . . . .
 
PROSECUTOR:                Q.          Did he at first deny that right to search or an
opportunity to search the vehicle?
 
OFFICER:                         A.          Yes, he did.
 
PROSECUTOR:                Q.          Okay. What was the next step that you went
through after he denied your request to search
the vehicle?
 
OFFICER:                         A.          Based on his actions at the time, he was
nervous, unsure of answering any of my
questions. I made the decision to call a canine
officer out to the scene to sniff around the
vehicle.
 
PROSECUTOR:                Q.          Is that something that you normally do?
 
OFFICER:                         A.          In a situation such as this, I do. If they can’t
give me straight answers, if they’re being
evasive in answering any of my questions, if
they’re becoming nervous, my suspicions are
aroused.
 
                                                         . . . .
From this testimony, we conclude that Freeman decided to continue his detention of R.J. after R.J.
denied consent to search because R.J. seemed nervous, was evasive in answering the question about
contraband, and avoided eye contact with Freeman. Nervousness is a weak indicator of hidden
narcotics. McQuarters, 58 S.W.3d at 257 (nervousness evidenced by failure to make eye contact,
shaking hands, and shallow breathing). The State points to this weak indicator only as Freeman’s
basis for reasonable suspicion in the case. However, the State cites no cases in which actions
evidencing nervousness, standing alone, constitute reasonable suspicion. 
            In McQuarters, the court rejected the State’s contention that a reasonable suspicion of hidden
narcotics in a car could be rationally inferred from (1) nervousness, (2) failure to make eye contact
with the officer, (3) shaking hands, (4) shallow breathing, (5) a rental agreement that named someone
other than the appellant or his passenger as the authorized driver of the car, and (6) conflicting stories
from the appellant and his passenger about their trip. Id. We likewise conclude that R.J.’s
nervousness, failure to make eye contact with Freeman, and evasiveness in answering Freeman’s
question about contraband are insufficient to constitute reasonable suspicion. See id.
            The law allowed Freeman to consider the totality of the circumstances as well as his personal
experience when forming a reasonable suspicion. See id. However, based upon the record presented
here, a reasonable suspicion that R.J. was hiding drugs cannot be rationally inferred from the facts.
Consequently, we hold that Freeman’s continued detention of R.J. after R.J. denied consent to search
was unreasonable. Accordingly, we sustain R.J.’s first issue. 
 
Voluntariness of Consent
            In his second issue, R.J. contends that the trial court should have granted his motion to
suppress because his consent to search was involuntary. The State urges that R.J.’s consent was
voluntary.
Applicable Law
            Under the Fourth Amendment to the United States Constitution, a search conducted without
a warrant issued upon probable cause is per se unreasonable, subject only to specifically established
and well-delineated exceptions.


 Rayford v. State, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003)
(citing Schneckloth, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)). A search conducted
with consent is one such exception, so long as the consent is voluntary. Rayford, 125 S.W.2d at 528
(citing Schneckloth, 412 U.S. at 219-23, 93 S. Ct. at 2043-46). 
            The United States Constitution requires the State to prove the voluntariness of consent by a
preponderance of the evidence. Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000).
The Texas Constitution requires the State to show by clear and convincing evidence that the consent
was freely given. Id. Voluntariness is determined from the totality of the circumstances. Reasor
v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). If the record supports a finding by clear and
convincing evidence that consent to search was freely and voluntarily given, we will not disturb that
finding. See Carmouche, 10 S.W.3d at 331.
            In order to be voluntary, the consent to search must “not be coerced, by explicit or implicit
means, by implied threat or covert force.” Id. (quoting Schneckloth, 412 U.S. at 228, 93 S. Ct. at
2048). To be considered voluntary, a suspect’s consent must not be the result of physical or
psychological pressures from law enforcement. Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim.
App. 1993). Thus, if consent is obtained through duress or coercion, whether actual or implied, that
consent is not voluntary. Schneckloth, 412 U.S. at 248-49, 93 S. Ct. at 2059; Allridge v. State, 850
S.W.2d 471, 493 (Tex. Crim. App. 1991). Consent must be shown to be positive and unequivocal,
and it is not shown by an acquiescence to a claim of lawful authority. Carmouche, 10 S.W.3d at
331.
            The following factors are among those that are relevant in determining whether consent is
voluntary: (1) the youth of the accused; (2) the education of the accused; (3) the intelligence of the
accused; (4) the constitutional advice given to the accused; (5) the length of the detention; (6) the
repetitiveness of the questioning; and (7) the use of physical punishment. Reasor, 12 S.W.3d at 818.
Additionally, testimony by law enforcement officers that no coercion was involved in obtaining the
consent is evidence of the consent’s voluntary nature. Martinez v. State, 17 S.W.3d 677, 683 (Tex.
Crim. App. 2000). A police officer’s failure to inform the accused that consent can be refused is also
a factor to consider. Johnson v. State, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002). The absence
of such information does not automatically render the consent involuntary. Id. However, the fact
that such a warning was given has evidentiary value. Allridge, 850 S.W.2d at 493. Moreover,
consent is not rendered involuntary merely because the accused has been detained. See Johnson,
68 S.W.3d at 653.
Analysis
            The record reflects that R.J. was sixteen years old at the time of the offense. He had no prior
experience with law enforcement. More particularly, R.J. was unfamiliar with his Fourth
Amendment rights as evidenced by his question regarding whether the law required Freeman to
search his vehicle. These factors weigh against the voluntariness of R.J.’s consent. 
            As the State points out, the record further reflects that Freeman initially advised R.J. that he
had the right to refuse consent to a vehicle search, and R.J. did so. This factor weighs in favor of
voluntariness. 
            When R.J. refused to consent to the search, Freeman called for the canine officer. After
making the call, Freeman explained to R.J. that the dog would sniff the vehicle and that the officers
would have probable cause to search the vehicle if the dog “hit” on any scent indicating narcotics
or other illegal substances. By this explanation, Freeman implicitly represented to R.J. that (1) the
canine sweep was inevitable, (2) R.J. could not refuse to permit the sweep, and (3) he was not free
to leave prior to the completion of the sweep. We have held that Freeman did not have reasonable
suspicion to continue R.J.’s detention after R.J. refused consent to search. Therefore, Freeman could
not continue R.J.’s detention to conduct a canine sweep. See State v. Marino, No. 2-01-474-CR,
2003 WL 851953 (Tex. App.–Fort Worth 2003, pet. ref’d) (not designated for publication) (citing
McQuarters, 58 S.W.3d at 257) (canine sweep is generally not considered a search and therefore
does not require consent, but officer is required to establish reasonable suspicion to prolong a traffic
stop to perform a canine sweep for drugs); see also Veal v. State, 28 S.W.3d 832, 835 (Tex.
App.–Beaumont 2000, pet. ref’d). However, Freeman’s explanation of the impending sweep
conveyed the opposite message. This factor weighs against voluntariness.
            After explaining the sweep to R.J., Freeman asked if there was marijuana in the vehicle. R.J.
then admitted there was marijuana in a compartment above the rear view mirror. Freeman again
requested permission to search the vehicle, and this time R.J. gave his consent, despite his prior
refusal. Because this reversal occurred immediately after it became apparent that the canine sweep
was inevitable, this factor weighs against voluntariness.
             Based upon our application of the relevant factors to the record before us, we conclude that,
on balance, the factors supporting R.J.’s assertion of involuntary consent outweigh those supporting
the State’s position. Consequently, we hold that the State did not meet its heightened burden to
prove voluntariness of R.J.’s consent by clear and convincing evidence. Accordingly, we sustain
R.J.’s second issue.
            
Disposition
            Having sustained R.J.’s first and second issues, we hold that the trial court abused its
discretion in denying R.J.’s motion to suppress. We reverse the trial court’s order and remand the
cause for proceedings consistent with this opinion.
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
Opinion delivered October 29, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


(PUBLISH)