In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00152-CR


______________________________




THE STATE OF TEXAS, Appellant



V.



ZACHARY JAMES HOLLAND, Appellee




 


On Appeal from the County Court


Fannin County, Texas


Trial Court No. 43511




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 As Texas Department of Public Safety Troopers Ricardo Landeros and Carmen Barker (1)
traveled south on Highway 273 in Fannin County toward an establishment known as "J.C. Whiskey
River," they noticed a vehicle driven by Zachary James Holland emerge from that establishment onto
Highway 273 and turn north toward them. From Landeros' and Barker's testimony at the pretrial
suppression hearing, before stopping Holland's vehicle, the troopers perceived no evidence (2) that
Holland was intoxicated; and the only reason they gave for the stop was that, when he was about
three to four car lengths (3) away from the troopers' vehicle, Holland briefly switched his vehicle's
headlights to high beams before returning them to low beams. After stopping Holland, however, the
troopers discovered numerous indicators that Holland was intoxicated. (4)

 Holland successfully challenged the stop with a pretrial motion to suppress evidence obtained
as a result of the stop. The State appeals the suppression of that evidence, claiming that the troopers
had reasonable suspicion for the stop. We affirm.

 At the suppression hearing, Holland argued the high-beam light did not interfere with the
troopers' vision. The State responded that, no matter how trivial his actions, Holland violated the
law by turning on his high beams within 500 feet of the troopers. The trial court stated, "Based on
. . . Trooper Landeros's testimony, it went from low to high and right back to low. It shows, to this
Court's satisfaction, that the operator was trying to follow the law. And I understand what you're --
but that's going to be the order of the court." 

 We review the trial court's decision on a motion to suppress evidence by applying a
bifurcated standard of review deferring to the trial court's determination of historical facts that
depend on credibility, but reviewing de novo the trial court's application of the law. Wiede v. State,
214 S.W.3d 17, 25 (Tex. Crim. App. 2007); see Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any
theory of law that finds support in the record." Gonzalez v. State, 195 S.W.3d 114, 126 (Tex. Crim.
App. 2006); see Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Generally, after
granting deference to the trial court's determination of historical facts, we review de novo
determinations of reasonable suspicion and probable cause. Guzman, 955 S.W.2d at 87.

  Individuals  have  the  right  to  be  secure  against  unreasonable  searches.  U.S.  Const.
amend. IV; Tex. Const. art. I, § 9. A criminal defendant alleging a Fourth Amendment violation
bears the burden of producing some evidence that rebuts the presumption of proper police conduct. 
Amador v. State, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). "A defendant meets his initial
burden of proof by establishing that a search or seizure occurred without a warrant." Id. The burden
then shifts to the State to prove that the search or seizure was nonetheless reasonable under the
totality of the circumstances. Id. at 672-73. Evidence must be excluded if a causal connection is
established between illegal actions by law enforcement and the evidence. Roquemore v. State, 60
S.W.3d 862, 870 (Tex. Crim. App. 2001); see Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon
2005).

 Under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, the police must be able to articulate
specific facts that support a reasonable suspicion that the suspect is engaging in, or is about to engage
in, criminal activity. "[T]he police officer must be able to point to specific and articulable facts
which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 
Davis v. State, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997). "A routine traffic stop resembles an
investigative detention." State v. Cardenas, 36 S.W.3d 243, 246 (Tex. App.--Houston [1st Dist.]
2001, pet. ref'd). A law enforcement officer may lawfully stop and detain a person for a traffic
violation committed in the presence of the officer. Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim.
App. 1992); Zervos v. State, 15 S.W.3d 146, 151 (Tex. App.--Texarkana 2000, pet. ref'd).

 The State's sole argument, both at the suppression hearing and on appeal, is that the officers
had reasonable suspicion that Holland violated Section 547.333(c) of the Texas Transportation Code. 
Section 547.333(c) provides as follows:

 (c) A person who operates a vehicle on a roadway or shoulder shall select a
distribution of light or composite beam that is aimed and emits light sufficient to
reveal a person or vehicle at a safe distance ahead of the vehicle, except that: 

 (1) an operator approaching an oncoming vehicle within 500 feet shall select: 

 (A) the lowermost distribution of light or composite beam, regardless of road
contour or condition of loading; or 

 (B) a distribution aimed so that no part of the high-intensity portion of the
lamp projects into the eyes of an approaching vehicle operator; and 

 (2) an operator approaching a vehicle from the rear within 300 feet may not
select the uppermost distribution of light. 


Tex. Transp. Code Ann. § 547.333(c) (Vernon 1999). 

 Although the reason for suppression enunciated by the trial court (that Holland was trying
to comply with the law) is not a valid legal basis for granting a motion to suppress, the trial court
also found that the exception in subsection (c)(1)(B) of the above section applied to this case. (5) The
trial court made a finding of fact that "the Defendant did not operate any part of the high intensity
portion of the lamp of the motor vehicle so that it projected into the eyes of an approaching vehicle's
operator." We are obligated to uphold the trial court's ruling on the motion to suppress if that ruling
was supported by the record and was correct under any theory of law applicable to the case. State
v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). "That rule holds true even if the trial court
gave the wrong reason for its ruling." Armendariz v. State, 123 S.W.3d 401, 404 (Tex. Crim. App.
2003).

 The State argues the fact that the high-beam lights were activated approximately three to four
car lengths in front of the police requires a finding that the light did project into the officers' eyes.
But there is some evidence in the record that the high-beam lights were aimed so that no part of the
high-intensity portion of the lamp projected into the eyes of an approaching vehicle operator. 
Landeros testified he was not "blinded" by the high beams. (6) When asked "[a]nd at no time, did these
high beams, in any way, interfere with your vision, your operation of your vehicle, or in any way
interfere with anything about your operating your vehicle, right," Landeros responded, "That's
correct." Barker testified she was not "blinded by the light" and could not remember whether she
had to avert her eyes. While the officers testified they observed Holland activate the high beams
within 500 feet of their patrol car, the event could have been observed from any angle. 

 The trial court's finding was entirely factual and has some support in the record. We must
afford "almost total deference to the trial court's determination of historical facts that the record
supports, especially when the fact-findings are based on an evaluation of the witnesses' credibility
and demeanor." See Ross, 32 S.W.3d at 856. While we may not have reached the same conclusion,
we are prohibited from substituting our opinion for the trial court's. Because the alleged violation
of Section 547.333(c) of the Texas Transportation Code was the sole justification for the traffic stop,
the trial court did not abuse its discretion in determining the officers lacked reasonable suspicion to
justify stopping Holland. (7)

 We affirm the order of the trial court granting Holland's motion to suppress.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: November 17, 2008

Date Decided: December 12, 2008


Do Not Publish
1. Barker, who had been commissioned as a state trooper approximately a month before, was
a passenger in the patrol car; Landeros, Trooper Barker's field training officer, was driving the patrol
car. 
2. Landeros testified he had activated his radar as Holland approached, establishing that
Holland was not speeding. Holland was not weaving in his lane and did not cross the center lane or
cross over into "the right-hand-side lane." 
3. Barker testified she estimated three to four car lengths to be fifteen to twenty yards. 
4. Holland admitted to drinking earlier in the evening, had slurred speech, had glassy eyes, and
had a strong odor of alcohol. Based on Holland's performance of several field-sobriety tests, the
Troopers concluded that Holland was intoxicated. The State intended to use this evidence obtained
during the traffic stop to prosecute Holland for misdemeanor driving while intoxicated.
5. The State argues the trial court erred in granting the motion to suppress because Holland
"was trying to follow the law." We agree with the State that proof that a defendant unsuccessfully
tried to follow the law is not sufficient to support a motion to suppress. If a defendant commits a
traffic offense, even unintentionally, a police officer may conduct a traffic stop. 
6. Landeros opined that, because Holland was driving a 1957 Chevrolet, the vehicle's headlight
intensity was less than more modern cars. The trial court could have reasonably disregarded this
explanation in part or whole. "The trial judge is the sole fact finder at a hearing on a motion to
suppress evidence obtained in a search, and may choose to believe or disbelieve any or all of a
witness' testimony." Allridge v. State, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991).
7. The State also argues the trial court applied the wrong standard for reasonable suspicion. 
The State cites a number of cases in support of its argument "the issue is not whether an offense was
actually committed but, instead, whether the officer had 'reasonable suspicion' to believe an offense
was being committed." See Garcia v. State, 43 S.W.3d 527 (Tex. Crim. App. 2001); Drago v. State,
553 S.W.2d 375 (Tex. Crim. App. 1977); Hicks v. State, 255 S.W.3d 351 (Tex. App.--Texarkana
2008, no pet.); McQuarters v. State, 58 S.W.3d 250, 255 (Tex. App.--Fort Worth 2001, pet. ref'd). 
As this Court has stated, "proof that an offense was actually committed is not necessary to justify the
investigative detention as long as [the police officer] reasonably believed that a violation was in
progress." Hicks, 255 S.W.3d at 354-55. An incorrect understanding of the law, however, does not
give rise to a reasonable belief. An officer's incorrect understanding of the law will not "satisfy the
Fourth   Amendment   and   rise   to   the   level   of   reasonable   suspicion."   Fowler   v.   State,
 No. 02-06-00183-CR, 2008 Tex. App. LEXIS 6253 (Tex. App.--Fort Worth Aug. 14, 2008, pet.
filed).



um Grid 3 Accent 4"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00037-CV

                                                ______________________________

 

 

                                 DANNY WAYNE MARTIN,
Appellant

 

                                                                V.

 

                                  AMANDA JOANN PARRIS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 102nd
Judicial District Court

                                                          Red
River County, Texas

                                                          Trial Court
No. CV01804

 

                                                    
                                              

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            Danny
Wayne Martin appeals from a final protective order entered in favor of his
ex-girlfriend Amanda JoAnn Parris after a finding of family violence.  In his pro se appeal, Martin complains that
the trial court erred in dismiss[ing] the public defender from representing
him in the underlying civil proceeding. 
Martin alleges that lack of counsel forced him to violate his Fifth
Amendment rights and that the Equal Protection Clause of the United States
Constitution was violated because he was not treated the same as those
similarly situated.  He also complains
that the evidence was factually insufficient to support the issuance of the
protective order, that the trial judge was biased, and that the trial court
committed the following alleged errors: 
(1) failing to orally pronounce that family violence was likely to occur
in the future; (2) holding Martin in contempt of court; (3) failing to limit
the opposing partys questioning; and (4) admitting evidence where there was
no proper foundation.  We affirm the trial
courts judgment. 

I.          Expiration of the
Protective Order Does Not Render this Appeal Moot 

            Appellate
courts decide only those issues in which a controversy exists.  Camarena
v. Tex. Employment Commn, 754 S.W.2d 149, 151 (Tex. 1988).  The final protective order in this case
expired by its own terms on August 12, 2010. 
We must first address whether the expiration of the protective order has
rendered this case moot before we examine the merits of Martins claim.  Clements
v. Haskovec, 251 S.W.3d 79, 83 (Tex. App.Corpus Christi 2008, no pet.); State for the Protection of Cockerham v.
Cockerham, 218 S.W.3d 298, 302 (Tex. App.Texarkana 2007, no pet.). 

            The
general rule is that a case becomes moot, and thus unreviewable, when it
appears that a party seeks to obtain relief on some alleged controversy when in
reality none exists.  Schaban-Maurer v. Maurer-Schaban, 238
S.W.3d 815, 822 (Tex. App.Fort Worth 2007, no pet.) (citing Williams v. Lara, 52 S.W.3d 171, 184
(Tex. 2001)); Cockerham, 218 S.W.3d
at 301.  Texas law does recognize a collateral
consequences exception to the mootness doctrine.  Fed.
Deposit Ins. Corp. v. Nueces County, 886 S.W.2d 766, 767 (Tex. 1994); Cockerham, 218 S.W.3d at 302.  The collateral consequences exception is
only invoked under narrow circumstances when vacating the underlying judgment
cannot cure adverse consequences suffered by the appellant.  Marshall
v. Housing Auth. of City of San Antonio, 198 S.W.3d 782, 789 (Tex.
2006).  Such narrow circumstances exist
when as a result of the judgments entry (1) concrete disadvantages or
disabilities have in fact occurred, are imminently threatened to occur, or are
imposed as a matter of law; and (2) the concrete disadvantages and disabilities
will persist even after the judgment is vacated.  Id.;
see Gen. Land Office of the State of Tex. v. OXY U.S.A., Inc., 789
S.W.2d 569, 571 (Tex. 1990) (noting collateral consequences exception is
invoked only when prejudicial events occurred whose effects will continue to
stigmatize after dismissal of case as moot).

            Appeals
of expired protective orders issued for family violence often fall into this collateral
consequences exception because although such orders may ultimately expire, the
stigma attached to them generally does not.  Clements,
251 S.W.3d at 84; see Schaban-Maurer,
238 S.W.3d at 82223; Cockerham, 218
S.W.3d at 303.  This stigma is not only a
social burden; there are also attendant legal consequences to being the
subject of such a protective order.  Schaban-Maurer, 238 S.W.3d at 82223 (noting
courts consider a history of domestic violence when judging child
conservatorship) (citing Tex. Fam. Code
Ann. § 153.004(f) (Vernon 2008)). 
For example, the Texas Family Code requires that information in a
protective order be entered into the state-wide law information system where
it presumably remains for various purposes.  Amir-Sharif
v. Hawkins, 246 S.W.3d 267, 270 (Tex. App.Dallas 2007, pet. dismd
w.o.j.); see Tex. Fam. Code Ann. § 86.0011 (Vernon 2008).  In Cockerham,
we noted there could be other possible legal consequences that could occur
should the appellant be convicted of other criminal acts.  Cockerham,
218 S.W.3d at 303.[1]  Thus, we find that the collateral
consequences exception to the mootness doctrine applies in this case.  Because the expiration of the protective
order does not render this appeal moot, we may consider the merits of Martins
claims.  Id. at 30304. 

II.        Sufficient Evidence
Supported the Trial Courts Judgment

            Martin complains
the courts judgment was contrary to the evidence and findings at trial. 

            A.         Standard of Review 

            Because a protective order provides
injunctive relief, we apply the standard of review that is applied when
reviewing injunctions.  In re Epperson, 213 S.W.3d 541, 542
(Tex. App.Texarkana 2007, no pet.). 
Thus, we review the trial courts grant of the protective order against
Martin for abuse of discretion.  Id. at 543 (citing Operation Rescue-Natl v. Planned Parenthood of Houston & S.E.
Tex., Inc., 975 S.W.2d 546, 560 (Tex. 1998)).  A trial court abuses its discretion if it
acts without reference to any guiding rules and principles or reaches a
decision so arbitrary and unreasonable as to amount to a clear and prejudicial
error of law.  Id. (citing Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 24142 (Tex. 1985)).

            B.         Factual Background 

            Martin
was the father of one of Parris two young children.  He was incarcerated prior to the incidence of
alleged family violence that prompted Parris petition for a protective
order.  Parris testified at the hearing
that Martin wrote threatening letters to her while in prison.  Martin moved to Paris, Texas, after his
release.  

            Parris
testified Martin just walked into her house one afternoon drinking a
Budweiser beer . . . . And he told me, he said, Youve got two choices . . . .
You can either pack the kids up and come with me to Paris for a couple of
weekends -- or for a couple of days, or you can die right here.  Parris refused to leave with the kids.  She testified Martin just yanked me up by
the neck and my hair and took me in the kitchen and slammed me up against the
kitchen counter and got a knife.  Martin
held the knife to Parris throat, but allowed her to attend to her younger
daughter when she started crying.  Parris
comforted her child while begging Martin to leave.  Again, Martin held the knife to Parris
throat.  The act was witnessed by Parris
eldest daughter.  With both children by
her side, Parris told him to stop, insisted, Im not going anywhere with
you, and begged Martin to leave.  

            At
some point when Martin turned to make a telephone call, Parris testified she just
took off running out the door, screaming for help.  And he came out, running after me, and he
yanked me by the back of my hair and he dragged me back into the house.  Martin had noticed that there were two
witnesses outside, and assumed they would call the police.  He slapped Parris and instructed her and the
children to hide in the back room of the house. 
The police arrived shortly thereafter. 
Parris testified she was wanting to scream for help but he was telling
me no, to be quiet, and I was just holding my kids close to me so that nothing
would happen to them.  After the
officers left, Martin said he would let Parris live if she did not call the
police, but would kill her if she did.  

            As
far as the nature of their prior relationship, Parris testified Martin would
either get drunk and I would always go find him, try to bring him home.  And then when he would get home, he would
either throw me around, call me a stupid b****, or he would slap me.  He would pull me by my hair.  He would make me have sex with him when I
didnt want to.  

            Martin
testified on his own behalf.  He claimed
that he witnessed Parris molesting his daughter, went to call the police, and
that Parris come at me with a knife. 
He admitted to previous abuse, but stated he would only slap her after
she slapped him first.  

            After
hearing the evidence, the trial court found

that the respondent in this matter, Mr. Danny
Martin, has in fact engaged in family violence on the date in question, as well
as prior occasions, and a family relationship has existed as provided in the
family code that is protected against violence. 
Having found that there have been acts of family violence perpetrated
against the movant, Amanda Parris, this Court now hereby enters a protective
order in favor of Ms. Parris against Mr. Martin at whichever time he may be
released from custody.

 

            C.        Analysis 

            A trial court
shall render a protective order if the court finds that family violence has
occurred and is likely to occur in the future. 
Tex. Fam. Code Ann. §
81.001 (Vernon 2008). Family violence includes dating violence, which
means:

an act by an individual that is against another
individual with whom that person has or has had a dating relationship and that
is intended to result in physical harm, bodily injury, assault, or sexual
assault or that is a threat that reasonably places the individual in fear of
imminent physical harm, bodily injury, assault, or sexual assault, but does not
include defensive measures to protect oneself.

 

Tex.
Fam. Code Ann. §§ 71.004(3), 71.0021(a) (Vernon 2008).

            Martin
and Parris both testified that they previously engaged in a dating
relationship.  After Parris testimony,
Martins presentation of contrary evidence came in the form of denials of
actions alleged to have been committed by him, coupled with allegations that
Parris was molesting his daughter.[2]  As finder of fact, the trial court was free
to believe Parris testimony and disbelieve Martins denials.  City of
Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005).  We conclude that the trial court was within
its discretion, based on Parris testimony, to find Martins actions in
slamming Parris into the kitchen counter, slapping her, and dragging her by the
hair constituted actions intended to result in physical harm, bodily injury,
and/or assault.  According to Parris,
Martin also held a knife to her throat and threatened to kill her twicefirst,
if she did not leave with him and the children, and second, if she informed the
police of his actions.  The trial court
could conclude these acts and threats reasonably placed Parris in fear of imminent
physical harm, bodily injury, and/or assault. 
We find the evidence legally and factually sufficient to support the
trial courts finding that family violence occurred. 

            Next,
we have stated, Oftentimes, past is prologue; therefore, past violent conduct
can be competent evidence which is legally and factually sufficient to sustain
the award of a protective order.  Epperson, 213 S.W.3d at 544.  Parris testified to a history of verbal,
physical, and sexual abuse by Martin during their past relationship, as well as
threats received before and after Martins incarceration.  Martin admitted to slapping Parris during
their dating relationship, though apparently in retaliation.  Coupled with the two threats that Martin
would kill Parris, it was reasonable for the trial court to conclude that
Martin would likely commit, or would threaten to commit acts constituting
family violence.  See id.  We find the evidence
legally and factually sufficient to support the trial courts discretionary
finding that family violence was likely to occur in the future.  Martins first point of error is overruled. 

III.       Appealability
and Preservation Issues 

            A.         Martin Did Not Preserve Complaint of
Allegedly Omitted Statutory Findings

            Although the written protective
order specified a finding that family violence was likely to occur in the
future, Martin claims that the trial court erred in failing to make the
requisite finding at the close of the hearing. 
See Tex. Fam. Code Ann. § 85.001(a) (Vernon 2008).  Judicial economy requires that a trial court
have the opportunity to correct an error before an appeal proceeds.  In re C.O.S., 988 S.W.2d 760, 765
(Tex. 1999).  As a prerequisite to
presenting a complaint for appellate review, the record must show that:  (1) the complaint was made to the trial court
by a timely request, objection, or motion. 
Tex. R. App. P. 33.1.  By failing to object or otherwise raise this
issue below, Martin failed to preserve this error for our review.  See Melton
v. Tex. Dept of Family & Protective Servs., No. 03-08-00168-CV, 2010
WL 668917, at *2 (Tex. App.Austin Feb. 25, 2010, no pet.) (mem. op.). 

            Nevertheless,
prior to the close of the hearing, the court stated, Under the terms of that
protective order he is to stay five hundred feet away from her, and he is not
going to have access to the children who are also a part of this sui[t], as
this Court feels that Mr. Martins conduct will constitute an endangerment to
the children as well as Ms. Parris. 
Were this point of error preserved, we would construe the courts
statement as a finding that family violence would likely occur in the future.  This point of error is overruled. 

            B.         Contempt Order Is Not Appealable 

            Martins brief summarily states that
the trial court acted without any guiding rules or principles.  Our review of the reporters record citation
provided reveals that Martin is complaining of an order of contempt entered by
the trial court.  

            During
Martins cross-examination, Martin made relevance objections instead of
answering questions asked.  The trial court
attempted to remedy the situation in the following manner:

                        THE
COURT:  
Sir, you answer the questions that are propounded to you. 

 

            A         Well, you
be honorable. 

 

                        THE COURT:   I beg your pardon?

 

            A         Im asking you to please be honorable. 

 

                        THE COURT:   Sir, youre in
contempt.  Six months in jail.  Thats the first thing.  Continue.

 

The court explained:

Mr. Martin made a comment to the Court which the
Court deems to be very inappropriate, which to the Court seems to be an attack
upon the integrity of the Court and the judiciary.  This Court is of the opinion that that
constituted an act of direct contempt. 
The Court hereby adjudicated him guilty of direct contempt of this Court
by the responses that have been entered to it or the comments that were made by
Mr. Martin to the Court.  This Court
assessed the punishment at six months confinement in the Red River County
jail.

 

In his brief, Martin argues that
his comment was not an attack as much as it was the truth, nor does a citizen
need put up with such foulness in its judicial system, nor the trial judge in
question. 

            We
broadly interpret Martins brief as an appeal of the order of contempt.  Decisions in contempt proceedings cannot be
reviewed through a direct appeal.  Hatton v. Griar, No. 4-09-00630-CV,
2011 WL 175501, at *2 (Tex. App.Houston [14th Dist.] Jan. 20, 2011, no pet. h.)
(mem. op.); see Ex parte Williams, 690 S.W.2d 243 n.1 (Tex. 1985); Pandozy v. Beaty, 254 S.W.3d 613, 616
(Tex. App.Texarkana 2008, no pet.).  Contempt
orders may only be reviewed through a habeas corpus proceeding or by writ of
mandamus.  Hatton, 2011 WL 175501, at *2 (citing Metzger v. Sebek,
892 S.W.2d 20, 55 (Tex. App.Houston [1st Dist.] 1994, writ denied)).  Accordingly, no attempted appeal from the
contempt order in this case will be considered. 

            C.        Issue of Bias Was Not Preserved

            Martin complains
that the trial judges findings were the result of passion, prejudice, and
improper motive and accuses the judge of bias and prejudice against Martin
and deep seated favortism [sic] towards the States attorney.  A complaint that a trial judge was biased must
generally be preserved in the trial court. 
See Tex. R. App. P. 33.1(a); Dow Chem. Co. v. Francis, 46 S.W.3d 237,
241 (Tex. 2001).  Preservation is
unnecessary only if the comment cannot be rendered harmless by proper
instruction.  In re M.E.C., 66 S.W.3d 449, 459 (Tex. App.Waco 2001, no pet.) (citing
Francis, 46 S.W.3d at 241). 

            Martin
bears the burden to explain how any comments made by the trial judge were
incurable or would excuse the failure to preserve error.  Francis,
46 S.W.3d at 241.  [J]udicial remarks during the course of a
trial that are critical or disapproving of, or even hostile to, counsel, the
parties, or their cases, ordinarily do not support a bias or partiality
challenge. Liteky v. United States,
510 U.S. 540, 555 (1994).  A judges
ordinary efforts at courtroom administration-even a stern and short-tempered
judges ordinary efforts at courtroom administration-remain immune.  Id. at
556. 

            In
support of this point of error, Martin cites to the order of contempt and the
courts decisions overruling his relevance objections to questions involving
his place of employment and address during his cross-examination.  Review of the trial judges remarks leads us
to conclude they were aimed at explaining his decision to hold Martin in
contempt of court.  The judges comment
that either the responses or the questions asked were not subject to objection
merely explained the judges decisions to overrule Martins relevance
objections.  Martins brief does not
adequately explain why the judges efforts at courtroom administration were
examples of incurable bias or prejudice such that he would be excused from
preserving error.  We find that because
Martin did not raise this issue with the trial court, it is not preserved for
our review.  Watson v. Michael Haskins Photography, Inc., No. 10-05-00010-CV,
2005 WL 3148074, at *3 (Tex. App.Waco Nov. 23, 2005, no pet.) (mem. op.).  

            Had
the point been properly preserved, we would find the trial courts comments
were not comments on the weight of the evidence, but were procedural
explanations that were within the discretion vested in the trial court during
the conduct of a trial.  Bott v. Bott, 962 S.W.2d 626, 631 (Tex.
App.Houston [14th Dist.] 1997, no pet.).

            This
point of error is overruled. 

            D.        Martin Did Not Seek Counsel 

            Martin complains
that the trial court committed fundamental error or plain error when it dismissed[3]
his attorney.  The record demonstrates
Martin was indigent, that Dan Meehan, a public defender, was appointed to
represent him on criminal charges arising from the incident, and that Meehan
was present to address criminal matters also being heard at the same time as
the hearing on the civil protective order. 
Prior to the civil hearing, the following exchange occurred:

                        THE COURT:             . . . . Mr. Meehan, were you here as the public defender
in these other cases, sir?

 

                        MR. MEEHAN:         On Mr. Martin?

 

                        THE COURT:             Yes. 

 

                        MR. MEEHAN:         I assume I am.  Yes,
sir. 

 

                        THE COURT:             All right, I have notated you as a public defender.  As far as representation in a protective
order, I dont think that you are obligated as the public defender.  

 

In this case, the trial judge had
the power to appoint counsel for Martin. 
Tex. Govt Code Ann. § 24.016
(Vernon 2004)[4]
(A district judge may appoint counsel to attend to the cause of a party who
makes an affidavit that he is too poor to employ counsel . . . .).  However, the record demonstrates Martin failed
to request appointment of counsel to represent him in this civil matter.[5]  Had Martin made such a request, we would
review the trial courts denial for an abuse of discretion.  Hines
v. Massey, 79 S.W.3d 269, 272 (Tex. App.Beaumont 2002, no pet.).[6]  Because Martin did not request that counsel
be appointed to represent him, he has failed to preserve this issue for our
review.  Hull v. Davis, 211 S.W.3d 461, 466 (Tex. App.Houston [14th Dist.]
2006, no pet.).[7]  This point of error is overruled.

            E.         Martin Failed to Preserve Equal
Protection Argument

            Martin
summarily alleges that the Equal Protection Clause of the United States
Constitution was violated because he was not treated the same as those
similarly situated.  His briefing
reveals that he is not complaining of any error committed by the trial court
with regard to the Equal Protection Clause. 
Rather, he cites to Striedel,
and urges this Court to:  find that the
facts of this case are the same as Striedel,
to hold that he was entitled counsel, and conclude that reversal is necessary
because Appellant has a right to equal protection of the laws.  At a minimum, [a] complaint on appeal must
address specific errors committed by the trial court.  Cammack
the Cook, L.L.C. v. Eastburn, 296 S.W.3d 884, 889 (Tex. App.Texarkana
2009, pet. denied).  Because Martins
brief does not complain of any act by the trial court, this point of error is
overruled.  

            F.         Martin Failed to Preserve Error
Regarding Lack of Proper Foundation

            Martin claims that he objected to
the evidence because there was no proper foundation for its admission.  His record citations demonstrate that while
there was no such objection, the following objections occurred during Parris
direct examination:

            Q         What kind of knife did he get?

 

            A         A regular kitchen knife. 

 

            Q         How big was it?

 

            .
. . .

 

            Q         Let the record reflect shes holding up
approximately a six-inch blade . . . .

 

            .
. . .

 

                        THE COURT:  And, Mrs. Collins, the record needs to
reflect that she is demonstrating approximately a six-inch blade.  

 

                        MR. MARTIN:  Objection. 
I dont see any knife here.  

 

                        THE COURT:  Overruled, sir.  

 

                        MR. MARTIN:  I dont see any evidence. 

 

                        THE
COURT:  Overruled . . . .

 

            .
. . .

 

            Q         Has he committed acts of violence
against you in the past?

 

            A         Yes, he
has. 

 

                        MR.
MARTIN:  Objection.  No evidence. 

 

                        THE
COURT:  Overruled. 

 

During Parris cross-examination,
Martin lodged an objection that there is no evidence whatsoever at this
hearing, Your honor.  The remaining
objections dealt with claims of Fifth Amendment privilege and relevance
objections to questions regarding his place of employment and current and past
addresses.  

            It
is well-settled that an objection at trial that does not comport with the
complaint raised on appeal preserves nothing for appellate review.  See
Tex. R. App.
P. 33.1(a); Ibarra v. State,
11 S.W.3d 189, 197 (Tex. Crim. App. 1999). 
Whereas his objections to the trial court were statements that in his
opinion, Parris testimony did not constitute evidence, that he was entitled to
assert a Fifth Amendment privilege to questions regarding employment, and that
information about his employment and address were irrelevant, his complaint on
appeal deals with want of such foundation.[8]  We conclude that Martins objections at trial
do not comport with his point raised on appeal. 
Therefore, the point of error was not preserved, and it is
overruled.  

IV.       Martins Fifth Amendment
Assertion of Privilege Was Not Made in Good Faith

            It
is well established that the Fifth Amendment privilege may be asserted in civil
cases where a party reasonably believes his or her answers will be
incriminating.  Tex. Dept of Public Safety Officers Assn v. Denton, 897 S.W.2d
757, 760 (Tex. 1995); In re Suarez,
No. 14-08-00740-CV, 2008 WL 4310098, at *2 (Tex. App.Houston [14th
Dist.] Aug. 28, 2008, no pet.).  The
trial court is to determine whether the assertion of the privilege is in good
faith and is justifiable under the totality of the circumstances.  In re
Commitment of Lowe, 151 S.W.3d 739, 745 (Tex. App.Beaumont 2004, pet.
denied).  A court can consider whether the privilege
is being asserted in a bona fide fear of self-incrimination or merely to avoid
discovery or to create delay.  Denton, 897 S.W.2d at 763. 

            The
record contains only one assertion of privilege to the following:

            Q         Okay, and where did you say you were
working, or did you say?

 

            A         Thats really nobodys business. 

 

            Q         Where youre working is nobodys
business?

 

            A         Yes, I work; but no, it aint your
business. 

 

            Q         Will you
instruct the defendant -- or the respondent . . .

 

            A         I claim
the Fifth Amendment. 

 

After the trial court overruled
the assertion of privilege, Martin testified he was a self-employed
roofer.  Because we find that a belief
that such an answer would be incriminating was unreasonable and unjustifiable,
we conclude Martin was not entitled to refuse to answer the question based on
an assertion of Fifth Amendment privilege. 
Further, under these circumstances, the trial court could find that the
assertion was not made in good faith. 
This point of error is overruled. 

V.        Trial
Court Did Not Abuse Discretion in Admitting Evidence 

            We apply an abuse of discretion
standard to the question of whether a trial court erred in an evidentiary
ruling.  Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex.
1998) (citing City of Brownsville v.
Alvarado, 897 S.W.2d 750, 753 (Tex. 1995)). 
A trial court abuses its discretion when it rules without regard to any
guiding rules or principles.  Id.  We must uphold the trial courts ruling if
there is any legitimate basis for its ruling. 
Id.

            Martin
claims that the trial court abused its discretion by failing to stop the
prosecutor from asking irrelevant questions. 
We interpret Martins argument as suggesting that the trial court erred
in overruling his relevance objections when questioned about his place of
employment and living arrangements.  In
her petition for a protective order, Parris asked the trial court to order that
Martin be prevented from going to or near her residence and/or possible place
of employment.  Specifically, Parris
requested that Martin be ordered to maintain a distance of 200 feet.  Thus, the proximity of Martins residence and
place of employment were facts the trial court could have considered in
determining the feasibility of the requirement to maintain a certain distance
from Parris.  We find that the trial
court did not abuse its discretion in overruling Martins relevance
objections.  Martins last point of error
is overruled.  

VI.       Conclusion 

            We
affirm the judgment of the trial court. 

 

                                                                        Jack
Carter

                                                                        Justice

Date Submitted:          February 17, 2011

Date Decided:             March 4, 2011











[1]Further,
the August 20, 2008, protective order in this case ordered that Martins
license to carry a concealed handgun be suspended due to the trial courts
finding of family violence.  Tex. Govt Code Ann. § 411.187(a)(5)
(Vernon Supp. 2010).  The normal
expiration period for a concealed handgun license is the first birthday of the
license holder occurring after the fourth anniversary of the date of issuance,
a date which has not passed.  Tex. Govt Code Ann. § 411.183 (Vernon
Supp. 2010).  





[2]Martins
allegation that Parris molested his child was referred to Child Protective Services.  





[3]Because
there is nothing in the record demonstrating Martin had an attorney-client
relationship with any attorney with regard to the civil protective order, we
find that any complaint regarding dismiss[al] of his attorney is without
merit.  





[4]Martin
argues that Section 81.007(a) of the Texas Family Code guarantees him right to
counsel in this civil matter.  That
section does not apply.  Section
81.007(a) states, The county attorney or the criminal district attorney is the
prosecuting attorney responsible for filing applications under this subtitle
unless the district attorney assumes the responsibility by giving notice of
that assumption to the county attorney. 
Tex. Fam. Code Ann. § 81.007(a) (Vernon
2008). 

 





[5]We
distinguish cases cited by Martin which discuss appointment of counsel when
faced with termination of parental rights or adoption issues.  Lassiter
v. Dept of Soc. Servs. of Durham County, N.C., 452 U.S. 18 (1981); Stanley v. Illinois, 405 U.S. 645
(1972); Armstrong v. Manzo, 380 U.S.
545 (1965); May v. Anderson, 345 U.S.
528 (1953).   

 





[6]We
distinguish the case of Striedel v.
Striedel, 15 S.W.3d 163 (Tex. App.Corpus Christi 2000, no pet.).  In Striedel,
our sister court found that the trial court should have considered appellants
request for counsel in a protective order proceeding which affected appellants
right to see his child.  Id. at 167.  In Striedel,
appellant had preserved the issue by requesting an attorney to represent
him.  Id.
at 165.  Recognizing this fact, our
sister court clarified we note, however, that appellant made repeated attempts
in the trial court to raise this issue, all to no avail.  We do not mean to express here any belief that
the right to counsel cannot be waived.  Id. at 166 n.1. 





[7]Martin
argues that his point of error presents fundamental error that can be addressed
for the first time on appeal. Fundamental error in a civil case is rare, but
occurs when the record shows that the court lacked jurisdiction or when the
error directly and adversely affects the public interest as that interest is
declared by the statutes and state constitution.  Matter
of J.G., 905 S.W.2d 676, 680 n.1 (Tex. App.Texarkana 1995), writ denied, 916 S.W.2d 949 (Tex. 1995)
(per curiam) (citing Pirtle v. Gregory,
629 S.W.2d 919, 920 (Tex. 1982)).  The
record demonstrates the trial court had jurisdiction of the matter, Martin does
not address how his lack of counsel with respect to Parris protective order
adversely affected the public interest, and caselaw establishes this error is
one that can be waived.  See Hull, 211 S.W.3d at 466.





[8]There
was no assertion that either Parris or Martin did not have personal knowledge
of their testimony.